NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, A CORPORATION, APPELLEE, V. NEBRASKA LAND CORPORATION, A CORPORATION, APPELLANT, IMPLEADED WITH WHEATBELT PUBLIC POWER DISTRICT, A CORPORATION, ET AL., APPELLEES.

223 N. W. 2d 425

Filed November 14, 1974. Nos. 39443, 39444, 39445, 39446.

Kutak, Rock, Cohen, Campbell, Garfinkle & Woodward, for appellant.

Marti, Dalton, Bruckner, O'Gara & Keating, for appellee Northwestern Mut. Life Ins. Co.

Peetz & Dorwart, for appellee Wheatbelt P. P. Dist.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

In this case four separate real estate mortgage foreclosure actions have been consolidated for appeal. The mortgage debtor, Nebraska Land Corporation, by and through its trustee in bankruptcy, has appealed from an order of the District Court directing the distribution of a portion of surplus sale proceeds to Wheatbelt Public Power District, the holder of a contractual lien in each of the four cases.

On September 16, 1970, Northwestern Mutual Life Insurance Company filed four separate real estate mortgage foreclosure actions against Nebraska Land Corporation, the titleholder of the land in each case. For purposes of clarity, the separate actions will be designated by the case numbers given them in this court.

In cases Nos. 39444, 39445, and 39446, the mortgages were each a first lien on the land involved in each respective case. In case No. 39443, the mortgage was a first lien on the property being foreclosed in that case, and a second lien on all the property in cases Nos. 39444, 39445, and 39446. In the foreclosure actions the mortgage creditor joined a number of other creditors, including Wheatbelt Public Power District. In each case Wheatbelt held a contractual lien for power furnished to the property involved in that case. After the foreclosure actions were initiated, a petition in bankruptcy was filed

by Nebraska Land Corporation under Chapter X of the Bankruptcy Act.

The District Court entered a decree of foreclosure in each case which fixed and determined the amounts of the mortgage and lien indebtedness as follows: No. 39443, Northwestern $397,593, and Wheatbelt $10,100.98; No. 39444, Northwestern $187,027, and Wheatbelt $3,868.32; No. 39445, Northwestern $184,011, and Wheatbelt $4,580.34; and No. 39446, Northwestern $156,676, and Wheatbelt $4,405.37.

In each case the property was ordered sold, and the net proceeds of the sales in each case were: No. 39443, $302,614.57; No. 39444, $249,732.13; No. 39445, $244,844.05; and No. 39446, $220,340.73. Each sale was confirmed.

After application of sale proceeds to Northwestern's first mortgage in each case, there was a deficiency of $109,688.43 in case No. 39443; and surpluses of $55,885.13 in No. 39444; $54,025.05 in No. 39445; and $58,783.73 in No. 39446. Northwestern then moved in case No. 39443 that it be paid the total net sale proceeds in that case to apply on its first mortgage; and that $109,688.43 of the total surplus in cases Nos. 39444, 39445, and 39446 be paid to Northwestern on its second mortgage, with the balance of the surplus to be retained by the court for distribution among the junior lienors. Northwestern also moved in cases Nos. 39444, 39445, and 39446 to have the remaining surplus in each case paid into case No. 39443 to be applied, first to Northwestern's second mortgage in that case, and the balance to be distributed among the junior lienors. These motions were neither granted nor denied.

On January 26, 1973, Northwestern moved in each case for an order requiring the sheriff to disburse to it from the proceeds of the sales in cases Nos. 39443, 39444, 39445, and 39446, the total sum of the indebtedness and interest due it in all four cases. These motions were granted by an order entered in each case, which also

directed that the balance be retained until further order of the court.

On July 20, 1973, Wheatbelt moved in each case for an order to distribute to it $24,800.53, the total sum of its liens, with interest, in all four cases, from the proceeds of the sales in all four cases. The appellant moved for an order denying any distribution to Wheatbelt and establishing and decreeing the priorities of the liens of each party in each separate case. On August 23, 1973, the District Court entered an order in each case requiring that out of the $59,005.48 total surplus remaining after satisfaction of Northwestern's mortgages, the sum of $24,800.53 be paid to Wheatbelt, and finding that the trustee appellant's rights and claims were inferior to the Wheatbelt liens. The appellant moved for a new trial, and upon overruling of that motion, this appeal followed.

The appellant contends that the proceeds of a mortgage foreclosure sale must be applied in accordance with the provisions of the mortgage or in accordance with the terms of the foreclosure decree. The thrust of the argument is that the sale in case No. 39443 resulted in a deficiency and therefore eliminated Wheatbelt's contractual lien in that case.

Wheatbelt, however, in effect contends that its liens were a pervasive single lien, which attached to all the premises involved in the four cases. The nature of Wheatbelt's liens therefore becomes critical. At the time of the foreclosures in each of the four cases here involved, Wheatbelt held four separate liens, one in each case, which arose out of four independently executed contracts between Wheatbelt and the titleholder of the real estate, for the furnishing of power by Wheatbelt to irrigation wells and pumps located on each of the four parcels of real estate. Wheatbelt's lien in each foreclosure case covered only the premises that were the subject of that foreclosure petition.

As a general rule, a lien creditor has no right to apply

the surplus proceeds of a foreclosure sale to other debts or claims which he holds against the debtor, and in this respect has no priority over other general creditors of the debtor, at least in the absence of an agreement relating thereto. A lien established for one debt or liability does not cover other and different debts or liabilities of the same debtor, especially where the rights of third persons intervene. The holder of two liens against the same debtor but on distinct parcels of land and for different debts cannot apply the surplus arising on the foreclosure of one of the liens to make up a deficiency on the other as against a trustee of the debtor for the benefit of creditors. 59 C. J. S., Mortgages, § 799 (d), p. 1529; 53 C. J. S., Liens, § 9, p. 854; Bruckman v. Healy, 126 Ore. 129, 268 P. 1001; Swann v. Maxcy, Inc., 120 Fla. 283, 162 So. 696; Midland Nat. Life Ins. Co. v. Johnson, 69 S. D. 150, 7 N. W. 2d 620.

In this case Wheatbelt's lien of $10,100.98 against the land foreclosed in case No. 39443 was wiped out when that land was sold on foreclosure sale for less than the amount of Northwestern's first mortgage. Unless that deficiency of $10,100.98 can be carried over and asserted as a lien against the surpluses in the other cases, Wheatbelt is relegated to the position of a general creditor with respect to the indebtedness formerly secured by its lien in case No. 39443.

Wheatbelt contends that the judgment or decree of foreclosure in case No. 39443 created a general judgment lien in Wheatbelt's favor that extends over to the property in cases Nos. 39444, 39445, and 39446. A foreclosure proceeding, however, is not brought to create a lien but to enforce one already in existence. It affects no property except the property being foreclosed for the particular lien and affects it only by limiting the time for redemption and authorizing its sale if not redeemed. A general lien on all the debtor's property is not created by a judgment or decree for the foreclosure of a lien on specific property described in the foreclosure action.

See, Central Union Trust Co. v. Appalachian Corp., 300 F. 397 (D. C. Ga.), affirmed 2 F. 2d 585 (5th Cir.); 59 C. J. S., Mortgages, § 701, p. 1276.

The appellant also contends that it was error to permit Northwestern to satisfy the deficiency in case No. 39443 by applying a portion of the amount of the surplus in each of the other three cases. Instead, the appellant asserts that Northwestern should have been required to apply the surplus in each of the other three cases to the deficiency in the order in which the foreclosure cases were filed. It is also contended that the pro rata or equal allocation of the surpluses in the three cases to the payment of Northwestern's deficiency constituted a marshaling of assets which was unauthorized and improper. We disagree.

The indebtedness to Northwestern which gave rise to the deficiency in case No. 39443 was also secured by a second mortgage which covered all the property in cases Nos. 39444, 39445, and 39446. Northwestern's second mortgage lien was established at one time and under one agreement, and applied with equal force in all three cases. There was no reason why the surplus in each case should not be allocated in such fashion that the liens of both creditors in each of the three cases would be fully satisfied. In the posture of these cases, the appellant stands in no better position to object to the allocation of surpluses between secured creditors than does the debtor, Nebraska Land Corporation.

It is a long-established rule that a court of equity which has obtained jurisdiction for any purpose may retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject matter. In a suit for foreclosure of a mortgage, after sale and satisfaction of the mortgage, if a surplus remains, the District Court has full power to determine the interest of all parties in the surplus and to do complete and final justice between the parties. See Mauzy v. Elliott, 146 Neb, 865, 22 N. W. 2d 142.

We have now held that Wheatbelt's lien of $10,100.98 against the property foreclosed in case No. 39443 was wiped out when that land was sold on foreclosure sale for less than the amount due on Northwestern's first mortgage. For that reason the order of August 23, 1973, entered in all four cases must be altered and modified in each case and individual and different orders entered in each case.

In case No. 39443, an order should be entered finding that the entire sale proceeds have been distributed to Northwestern to apply on its first mortgage, leaving a deficiency of $109,688.43, and that no funds remain for distribution to any junior lienors.

In each of cases Nos. 39444, 39445, and 39446, the court should order that the combined surplus remaining in those cases after the satisfaction of the deficiency, and the payment of Northwestern's second mortgage, the total of which surplus was $59,005.48, shall be allocated one-third to each of those three cases. The court should then direct that Wheatbelt Public Power District has a lien of $3,868.32, plus interest, in case No. 39444; a lien of $4,580.34, plus interest, in case No. 39445; and a lien of $4,405.37, plus interest, in case No. 39446; payment of which should be made out of the surplus in that particular case.

The judgments are modified and the causes remanded to the District Court for further proceedings in accordance with this opinion.

AFFIRMED AS MODIFIED, AND REMANDED WITH DIRECTIONS.