BURTON E. NIXON AND JAYNE B. NIXON, APPELLEES, V. DANIEL J. HARKINS AND JODY K. HARKINS, APPELLANTS.

369 N.W.2d 625

Filed June 28, 1985.   No. 84-441.

Richard E. Mueting of Mueting, DeLay & Stoffer, for appellants.

David A. Domina of Domina & Gerrard, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Burton E. Nixon and Daniel J. Harkins owned certain improved real property as tenants in common, each of their wives, respectively Jayne B. and Jody K., having a marital interest therein. The Nixons brought suit to partition the property. The Harkinses counterclaimed, seeking specific performance of a contract permitting them to pay the debt arising under a promissory note to the Nixons by assignment of the Harkinses' interest in the property to the Nixons, any difference between the value of the property and the debt to be adjusted in cash. By agreement of the parties the Nixons' suit was dismissed. A bench trial was then had on the Harkinses' counterclaim pursuant to a stipulation which delineated the amount owed to the Nixons on the promissory note and certain mutual obligations of the parties with respect to the property, and further specified that the only issue for the court to resolve was the fair market value of the property, the Harkinses having conveyed their interest in the property to the Nixons. The trial

court determined the fair market value of the property to be $110,000 and, after adjusting for the mutual obligations of the parties and the debt owed by the Harkinses to the Nixons, entered judgment in favor of the Nixons for $6,363.26, plus prejudgment interest. The Harkinses appeal, assigning as errors, in summary, (1) the receipt of certain evidence, (2) the limitation of cross-examination of a witness, (3) the striking of certain evidence, (4) the finding as to the fair market value of the property, and (5) the allowance of prejudgment interest. We reverse and remand for the entry of judgment in favor of the Harkinses in the sum of $15,636.74 against the Nixons.

Since the issue arises in a suit for the specific performance of a contract, the proceeding is equitable in nature. See *Matthews v. Matthews*, 215 Neb. 744, 341 N.W.2d 584 (1983). Consequently, we are required to review the matter de novo on the record and reach an independent conclusion without reference to the trial court's findings, subject to the rules that (1) when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite, and (2) this court is required, where the trial court has viewed the premises, to consider any competent, relevant facts revealed by the view and findings made by the court, provided the record contains competent evidence to support the findings. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Cline v. Franklin Pork, Inc.*, 219 Neb. 234, 361 N.W.2d 566 (1985); *Burgess v. Omahawks Radio Control Org.*, 219 Neb. 100, 362 N.W.2d 27 (1985).

It is also the rule that where the review is de novo, this court will disregard incompetent, irrelevant, and immaterial evidence admitted over proper objection. *In re Interest of S.S.L.*, 219 Neb. 911, 367 N.W.2d 710 (1985); *Stecker v. Stecker,* 197 Neb. 164, 247 N.W.2d 622 (1976).

Obviously, in order for us to determine what competent evidence is before us, we must first resolve the issues presented as to the correctness of the trial court's evidentiary rulings.

The Harkinses' complaints as to the receipt of evidence rest upon the admission of the testimony and report of Patrick

Morrissey, a licensed real estate appraiser, and the testimony presented by the plaintiff-appellee Burton E. Nixon, individually hereinafter referred to as Nixon.

The Harkinses argue Morrissey should not have been allowed to present evidence because he was not named as a witness, nor was his report listed as an exhibit as required by the pretrial order, which read in part: "Either party may call such additional witnesses as they [sic] desire at the time of trial provided the name and address of such witness is provided to opposing counsel at least ten days prior to the April 9, 1984 Trial Term." The order contains similar language concerning exhibits.

Morrissey testified as the last witness called by the Nixons on the first day of trial, April 24, 1984, and opined that the market value of the property was $100,000. The only objection made to the receipt into evidence of a report Morrissey had prepared concerning his appraisal was that it had not been listed as aforesaid. The trial court has a broad discretion in regard to the amendment of a pretrial order, and its ruling with respect thereto will not be disturbed absent an abuse of that discretion. See, *Peterson v. North American Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625 (1984); *Mousel v. ten Bensel*, 195 Neb. 456, 238 N.W.2d 632 (1976).

Harkinses' counsel was aware by April 2, 1984, that Morrissey was to be a witness. Additionally, Harkinses' counsel was given a copy of the Morrissey report on the very same day Nixons' counsel received it, April 20, 1984. No showing was made that the Harkinses' preparation for trial was hampered by that timing, and no request was made for a continuance of the trial on that ground. Under the circumstances it cannot be said the trial court erred in receiving the evidence presented by and through Morrissey, notwithstanding the language of the pretrial order.

The Harkinses also contend that their right to cross-examine Morrissey was restricted unduly. The applicable rule is that the extent, scope, and course of cross-examination rest within the discretion of the trial court, and, as such, the ruling of the trial court will not be disturbed in the absence of an abuse of that discretion. *Beranek v. Petracek*, 184 Neb. 516, 169 N.W.2d 275

290

(1969); *DeVore v. Board of Equalization*, 144 Neb. 351, 13 N.W.2d 451 (1944).

The trial judge attempted to recess the trial at 5:30 p.m. while Harkinses' counsel was cross-examining the witness. However, as Mr. Morrissey was scheduled to be out of town on the following day, the judge ruled that cross-examination could continue for another 15 minutes. The claim that the cross-examination was unduly restricted vanishes into a nonissue, for, so far as the record reveals, the time limit imposed had no effect upon the trial as counsel completed his cross-examination before that time limit expired. Moreover, no request was made that the witness be compelled to return on the next day or for a continuance of the trial.

The evidence adduced through the witness Morrissey is properly before us.

Next, the Harkinses assign as error the admission of Nixon's trial testimony, as an owner licensed as a real estate broker and an experienced contractor, that the fair market value of the property was $100,000 to $120,000, in the face of his earlier deposition testimony that the fair market value was $120,000 to $140,000. The contention is that under the holding of *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981), Nixon was bound to the opinion given in the deposition. *Momsen* holds that where a party clearly changes his deposition testimony at trial on a point vital to the case in order to meet the exigencies of the trial and no rational or sufficient explanation of the change exists, his trial testimony stands discredited as a matter of law, and he is bound by the admissions made at the deposition. At the time the deposition was taken, it was thought that the tenant of the building was considering buying the property for $120,000 to $140,000, and in that connection Nixon agreed with defendant-appellant Donald J. Harkins, individually hereinafter referred to as Harkins, to sell at that figure. At trial, however, Nixon stated the tenant was willing to pay $120,000 to $130,000. Although it appears a variation of $10,000 does not impress Nixon a great deal, he, unlike the situation in *Momsen*, was testifying as to a matter of opinion rather than a past factual occurrence and was not asked to explain why his opinion changed.

Under the circumstances his testimony is not discredited as a matter of law, and neither is Nixon bound by his earlier opinion. The question for this court, as it was for the trial court, is the weight to which the testimony is entitled.

Having disposed of the first two errors assigned by the Harkinses, we reach the third assignment, which is based upon the striking of the evidence of Paul R. Blaser.

Blaser, a licensed real estate appraiser who also teaches real estate courses at a community college, was called by the Harkinses and testified that the property was within the "range of value" of $170,000 to $174,000. Blaser insisted, however, that he had no opinion as to the property's fair market value and that the range of value was something different, which does not take into account all the factors which fair market value contemplates. He testified that he had not made an appraisal and was not rendering an opinion as an appraiser. Although the record does not establish what the range of value constitutes, the record does establish that it is something other than fair market value.

Neb. Rev. Stat. § 27-402 (Reissue 1979) in effect provides that all relevant evidence, unless subject to constitutional, statutory, or other exclusion, is admissible. The question therefore is whether, in view of that provision, Blaser's opinion as to the range of value was relevant to the issue before the court. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. Neb. Rev. Stat. § 27-401 (Reissue 1979); *Langfeld v. Department of Roads*, 213 Neb. 15, 328 N.W.2d 452 (1982).

The Harkinses appear to argue that since some factors involved in determining the range of value are involved in determining fair market value, the evidence was relevant in that fair market value might be inferred from the facts used in arriving at the range of value. The fact remains, however, that fair market value is something different than the range of value. Therefore, the fact that there exists a commonality of certain factors in the two measures is of no consequence, for the proof

of one would neither establish nor directly infer the other.

Consequently, the trial court properly excluded the Blaser evidence, and it is not before this court.

We are now ready to consider and weigh the evidence properly before us.

Nixon stated that in reaching his opinion he took into consideration, among other things, the fact that the building had a condensation problem, the source of which was in contention. One view was that the cause was inherent in the structure; the other view was that the problem resulted from the tenants' operations. Nixon described the structure as built of mismatched and in part used metal panels and as having a dock which, because of its slope and nearness to the street, made loading and unloading difficult.

Harkins, who had some education in appraising real estate and was an experienced builder of both residential and commercial structures, opined that the fair market value of the building was between $170,000 and $174,000.

Morrissey, having first inspected the property, used the three commonly accepted approaches to valuing property, the income approach, the cost approach, and the market, or comparable sales, approach. It developed, however, that of the three transactions he used in making his comparable sales study, one transaction was still pending under a written contract and the other two were merely sales listings.

Both Nixon and Harkins referred, without objection, to an appraisal made by Stuart Hales approximately 3 years prior to the trial in connection with a loan transaction at which the fair market value of the property was said to be $140,000. Based on that appraisal, a mortgage loan of $90,000 was negotiated; however, Nixon testified that the land and building together cost less than that sum. Morrissey testified the Hale appraisal was not useful for the present purpose, both because it was too old and because it had been made for loan purposes. Apparently, in Morrissey's mind fair market value shifts depending upon the purpose for which the figure is to be used.

Nixon had hired Ransom Roman, a licensed real estate appraiser, to make an appraisal of the property approximately 6 months after the property had been conveyed to the Nixons. He

was called as a witness by the Harkinses and testified that, in his opinion, using two of the commonly accepted approaches, as there were no comparable sales, the property had a fair market value of $154,400. He had earlier stated the fair market value to be $175,000, but explained that in rendering that opinion he had relied on rental figures provided by Nixon which proved to be wrong. He too had inspected the property.

The trial judge viewed the premises at the request of the Nixons; however, the record does not disclose what the view revealed.

From our de novo review in accordance with the rules set forth earlier in this opinion, we conclude that the fair market value of the property is $154,000. Accordingly, we reverse the judgment entered in favor of the Nixons against the Harkinses and remand the cause with the direction that judgment in the amount of $15,636.74 be entered in favor of the Harkinses against the Nixons.

There can be, of course, no prejudgment interest. The well-established rule of this jurisdiction has been that prejudgment interest is not recoverable on an unliquidated claim. A claim is unliquidated where a reasonable controversy exists either as to the right to recover or as to the amount of such recovery. *Guardian State Bank & Trust Co. v. Jacobson, ante* p. 235, 369 N.W.2d 80 (1985); *Jeffres v. Countryside Homes, ante* p. 26, 367 N.W.2d 728 (1985). Stated another way, a claim is liquidated where the evidence, if believed, makes it possible to compute the amount due with exactness without reliance upon opinion or discretion. In such an instance prejudgment interest is recoverable. *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985).

In the present case, as tried, there was no dispute but that the Harkinses could pay their debt to the Nixons by applying thereto their equitable interest in the property. Neither was there any dispute as to the amount owed by the Harkinses to the Nixons, nor was there any dispute with respect to the mutual obligations of the parties resulting from the mortgage and taxes levied against the property. There did exist, however, a dispute as to the fair market value of the property. Resolution of that value was required before the amount of the Harkinses' net

equity could be determined and offset against their indebtedness. As we have seen, fixing the fair market value of the property establishes whether the Harkinses owe the Nixons or the Nixons owe the Harkinses, and determines the amount of money which is to change hands. Under these circumstances it cannot be said the claim was liquidated.

REVERSED AND REMANDED WITH DIRECTION.