WARDELL DUPUY AND JANICE DUPUY, APPELLEES, V. WESTERN
STATE BANK, A NEBRASKA BANKING CORPORATION, APPELLANT;
R.J. PROPERTIES, INC., A NEBRASKA CORPORATION, AND R.J.
HAMEL, ALSO KNOWN AS RODNEY J. HAMEL, APPELLEES.

375 N.W.2d 909

Filed November 8, 1985.   No. 84-587.

Eric W. Kruger of Bradford & Coenen, for appellant.

Thomas Blount of Garber & Batt, for appellees Dupuy.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

Defendant Western State Bank appeals from a judgment of
the Douglas County District Court ordering that the parcel of
land known as Lot 19, Mossman & Wilson's Addition to the
City of Omaha, Douglas County, Nebraska, be released from a
mortgage encumbrance and further ordering that defendant
R.J. Hamel, also known as Rodney J. Hamel (Hamel), pay
Western State Bank the sum of $4,188.95 plus interest.

In March of 1978 Hamel obtained a loan from Western State
Bank. As security for the loan, Hamel executed a mortgage
which described three separate parcels of real estate: Lot 1,

Block 23, Village of Waterloo, Douglas County, Nebraska (Lot 1); Lot 19, Mossman & Wilson's Addition to the City of Omaha, Douglas County, Nebraska (Lot 19); and the north 50 feet of Lot 6, Block 11, Village of Waterloo, Douglas County, Nebraska.

In November of the same year, Hamel conveyed Lot 19 to R.J. Properties, Inc. Subsequently, in March of 1980 R.J. Properties sold Lot 19 by installment land contract to Wardell and Janice Dupuy, the plaintiffs in this action. Notice of the encumbrance on Lot 19 was contained on the face of the Dupuys' land contract.

Hamel defaulted on the loan, and subsequently Western State Bank filed a mortgage foreclosure action on January 30, 1981, describing in its petition only Lot 1 in Waterloo. Lot 19 was not described in the petition, and the Dupuys were not made a party to this action. On July 16, 1981, a decree of foreclosure was entered ordering the sale of Lot 1. On June 18, 1982, the property was sold. The district court entered an order confirming the sale. The clerk of the district court for Douglas County filed a certificate of satisfaction of mortgage with the Douglas County register of deeds. The certificate names only Lot 1 and is indexed only against this property.

The proceeds of the sale did not satisfy fully Hamel's debt to the bank. The bank made a demand on the Dupuys that they pay the amount in deficiency and threatened to institute a mortgage foreclosure action. The Dupuys brought a quiet title action in the Douglas County District Court naming the bank, R.J. Properties, Inc., and Hamel as defendants and contending that by virtue of the initial foreclosure action against Lot 1 the bank no longer had an enforceable security interest in the Omaha property. The bank counterclaimed against the Dupuys for foreclosure of the mortgage on the Omaha property and cross-claimed against R.J. Properties and Hamel for satisfaction of the deficiency amount. The bank now appeals the district court's order releasing Lot 19 from the mortgage encumbrance and ordering Hamel to pay the deficiency amount.

The bank asserts in its first assignment of error that the district court erred in finding that the initial foreclosure action

against Lot 1 operated in law as a release of the other parcels of real estate named in the mortgage instrument. Essentially, the bank argues that notwithstanding the fact that a single mortgage document describing three parcels of land was executed, in effect the mortgage agreement created three separate liens securing Hamel's debt. Because the bank did not exhaust its security interests when it foreclosed on only Lot 1, it is entitled to pursue by subsequent foreclosure on Lot 19 that portion of the debt yet unpaid.

The Dupuys counter that the bank's foreclosure of Lot 1 constituted an election by the bank to proceed against only one of the three secured parcels of land, whereupon the remaining property was released from the lien. To decide otherwise, the Dupuys argue, would constitute an impermissible splitting of a single cause of action and would violate the principle of res judicata.

At the outset, we recognize that in Nebraska, as in many jurisdictions today, a mortgage is a special interest in real property consisting of a security for a debt or obligation. *Barber v. Crowell*, 55 Neb. 571, 75 N.W. 1109 (1898). The mortgagee, therefore, holds only a lien upon the property, *Morrill v. Skinner*, 57 Neb. 164, 77 N.W. 375 (1898), and, absent stipulation to the contrary, title and right to possession remain in the mortgagor, Neb. Rev. Stat. § 76-276 (Reissue 1981). The mortgagee's lien entitles the mortgagee to compel foreclosure of the mortgagor's equity of redemption in the property should the mortgagor default on the debt. See, generally, G. Osborne, Handbook on the Law of Mortgages §§ 6, 12 (2d ed. 1970); *Northwestern Mut. Life Ins. Co. v. Nebraska Land Corp.*, 192 Neb. 588, 223 N.W.2d 425 (1974).

The Dupuys' position appears to be premised on the belief that a mortgage document can evidence only one security interest or lien. Since only one document was executed by Hamel and the bank, only one lien arose on the three parcels of property. If the bank wished to foreclose against all the secured parcels of land, it was free to do so; however, its failure to proceed against all of the secured property in the initial action waived its right to foreclose later against any of the remaining named property if the debt was not fully satisfied.

We believe that the Dupuys' theory not only represents a triumph of form over substance but under these facts also conflicts with applicable statutes and case law in Nebraska.

A lien has been characterized in this jurisdiction as an "obligation, tie, duty, or claim annexed to or attaching upon property by the common law, equity, contract, or statute . . . ." *Landis Machine Co. v. Omaha Merchants Transfer Co.*, 142 Neb. 397, 403-04, 9 N.W.2d 198, 203 (1943); see *Matter of Himberger*, 9 Bankr. 278 (D. Neb. 1981). An encumbrance upon property as security for the payment of a debt, a lien is perhaps most accurately described as a right afforded by law to have an obligation satisfied out of particular property, *Olsen, et ux. v. Kidman*, 120 Utah 443, 235 P.2d 510 (1951), thereby providing a supplemental remedy for the collection of a debt. See *Associated Bean Growers v. Chester B. Brown Co.*, 198 Neb. 775, 255 N.W.2d 425 (1977).

Although often used synonymously, a mortgage and a lien are not exact equivalents:

> Liens, mortgages, and pledges, while differing in many respects, are somewhat analogous, and in everyday parlance the term "lien" includes a mortgage or pledge, as it does all similar obligations by which specific property may be subjected to the payment of a particular debt. *The word lien, however, is more comprehensive than either a mortgage or a pledge.*

(Emphasis supplied.) 51 Am. Jur. 2d *Liens* § 3 at 144-45 (1970).

In *Dysart v. State Dept. of Public Health & Welfare*, 361 S.W.2d 347 (Mo. App. 1962), the court distinguished a mortgage from a lien, concluding that the mortgage instrument "create[s] and evidence[s] a lien . . . to secure the debt." *Id.* at 353. Using a similar line of reasoning, the Court of Appeal for the State of California found in *Sanborn v. Sanborn*, 3 Cal. App. 2d 437, 39 P.2d 830 (1934), that the purported mortgage document upon which a foreclosure was based did not constitute a mortgage as opposed to a chattel lien because neither words of conveyance nor transfer were used to create the proprietary interest inherent in a lien. *Swanson v. Graham*, 27 Wash. 2d 590, 179 P.2d 288 (1947). In short, "Every lien is not a mortgage." *Sanborn, supra* at 440, 39 P.2d at 831.

Our conclusion is consistent with the applicable statute governing the construction of documents creating interests of any kind in real property. Neb. Rev. Stat. § 76-205 (Reissue 1981) directs the courts, when construing instruments creating interests in real estate, "to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." Neb. Rev. Stat. §§ 25-2137 through 25-2155 (Reissue 1979) consist of those statutes specifically applicable to mortgage foreclosure actions. Nowhere in these statutes do we find a reference to or definition of multiple liens, how they are created, or the nature of their longevity, although, as noted earlier, § 76-276 directs that legal title to mortgaged property remains in the mortgagor so that the mortgagee holds only a security interest enforceable upon default of the loan.

Turning to relevant case law, we find in *Overland-Wolf, Inc. v. Koory*, 183 Neb. 611, 162 N.W.2d 889 (1968), the declaration that the mortgagee's intent will control whether the lien has been preserved or extinguished. Additionally, absent an expression of intent, the court will presume that the mortgagee intended that which would prove most advantageous to it. *Id.*

*Overland-Wolf* addressed the related issue of when a lien is extinguished by merger of the fee and the mortgage. Despite the general rule that upon judgment of foreclosure and sale of the property, the mortgage merges with the fee, "[i]t is the intention of the mortgagee that is controlling. Before there can be merger the evidence must show that the [mortgagee] intended that there be a merger. In the absence of such evidence, the lien of the plaintiff's mortgage remains effective." *Id.* at 614, 162 N.W.2d at 891.

Similarly, language in an earlier case, *National Life Ins. Co. v. Fitzgerald*, 61 Neb. 692, 85 N.W. 948 (1901), foreshadowed the holding in *Overland-Wolf*. In *Fitzgerald* the mortgagee sought to foreclose after the death of the mortgagor and while his estate was being administered. Afterwards, but before the decree of foreclosure was rendered, evidence of the debt as described in the mortgage agreement was filed in the county court by the mortgagee as a claim against the debtor's estate. The estate posited that the filing of the claim was an assertion of

a general lien, which was inconsistent with the existence of the special lien on a part of the decedent's estate. The court specifically found that "[e]very mortgagee secures by his contract a special lien on some part of his debtor's property; and, speaking generally, a right to appropriate the whole of such property, if necessary to satisfy his claim." *Id.* at 693, 85 N.W. at 948.

Another related principle commented upon in *Fitzgerald*, that is, that "an action to foreclose a mortgage is not a suit for the recovery of money alone," was reinforced in two later cases, *Northwestern Mut. Life Ins. Co. v. Nebraska Land Corp.*, 192 Neb. 588, 223 N.W.2d 425 (1974), and *Lincoln Joint Stock Land Bank v. Barnes*, 143 Neb. 58, 8 N.W.2d 545 (1943). In *Northwestern Mut.* the court explained the purpose and effect of a foreclosure action: "A foreclosure proceeding, however, is not brought to create a lien but to enforce one already in existence. *It affects no property except the property being foreclosed for the particular lien and affects it only by limiting the time for redemption and authorizing its sale if not redeemed.*" (Emphasis supplied.) 192 Neb. at 592, 223 N.W.2d at 428. The mortgagor in *Northwestern Mut.* argued that a deficiency after foreclosure eliminated all remaining liens, while the mortgagee claimed that its liens, executed in four separate mortgage instruments, were essentially a single lien which attached to all the premises involved in the four cases. Noting that "[t]he nature of [the mortgagee's] liens therefore becomes critical," *id.* at 591, 223 N.W.2d at 427, the court held that the documents had created four separate liens. It followed that the mortgagee's lien in each foreclosure covered "only the premises that were the subject of that foreclosure petition." *Id.* at 591, 223 N.W.2d at 428.

Furthermore, in *Lincoln Joint Stock Land Bank, supra*, the court distinguished a foreclosure from a quiet title action, stating that the former existed "for the purpose of determining the existence of a mortgage lien, to ascertain the amount thereof and its priority, and to obtain a decree directing the sale of the premises . . . ." *Id.* at 61, 8 N.W.2d at 550. See, also, *Wittwer v. Dorland*, 198 Neb. 361, 253 N.W.2d 26 (1977). Also significant was the court's acknowledgment that the

mortgagee's intent would control vis-a-vis the extinguishment of the lien. *Lincoln Joint Stock Land Bank, supra.*

With these statutes and decisions as background, we now consider the effect of the mortgage instrument at issue. We note that our review of equitable action is de novo on the record, leaving us free to reach independent conclusions irrespective of the decisions reached by the trial court. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985). The precise legal descriptions of the parcels in the mortgage agreement and the parties' subsequent actions make it apparent that Hamel and the bank intended to impose liens upon each parcel of land. Should Hamel default on the loan, it seems reasonable to conclude that by executing the document, both parties contemplated that any or all of the named property could be subject to foreclosure to satisfy completely Hamel's debt. That the parcels were intended by the parties to be individually encumbered is further evidenced by the terms in the Dupuys' land contract, terms which specifically refer to the bank's lien on Lot 19.

Given the parties' actions, as well as the face of the instrument, we conclude that the parties intended to secure Hamel's obligation by encumbering the individual parcels of real estate with liens enforceable to the extent of the debt. Applying the *Overland-Wolf* presumption that the mortgagee intends that which is most advantageous to it, we find that the fact that such intent was evidenced in one instrument as opposed to three does not alter this conclusion. We see no reason, in logic or in law, to limit the number of security interests, or liens, that a mortgage agreement can evidence. Of course this rule applies assuming a legally sufficient description of the properties in the mortgage instrument.

We are cognizant of the points raised in the dissent, but we find more persuasive and illustrative of our position the reasoning used by the Court of Appeals for the State of Michigan in *Michigan National Bank v. Martin*, 19 Mich. App. 458, 172 N.W.2d 920 (1969). After holding that while the mortgagor's indebtedness remained unsatisfied, the mortgagee's first foreclosure did not preclude subsequent foreclosures for the balance of the debt, the court explained the

considerations behind the rule:

> This is not to say that a mortgagee who holds several mortgages securing the same debt must foreclose each mortgage in separate actions. Cases may arise in which it would be convenient to join foreclosures upon separate mortgages in one action. Indeed, upon plaintiff's motion, the two suits brought in Kent county were consolidated for trial. However, there may also arise cases in which adoption of any rule of compulsory joinder would work serious hardship on both mortgagor and mortgagee. Where one of several mortgaged properties, if sold upon foreclosure, would yield funds sufficient to satisfy the principal debt, requiring foreclosure upon all properties would needlessly involve the additional properties in litigation. Also, where the mortgagor is in default on only one of several secured notes, all evidencing the some [sic] loan, a rule of compulsory joinder would force a mortgagee either to wait until the other notes are due before foreclosing upon all mortgaged properties or, in the alternative, to lose foreclosure rights upon the security for notes not yet due. [Citation omitted.] We cannot adopt a rule which compels such unfortunate results.

*Id.* at 463-64, 172 N.W.2d at 922.

The bank's foreclosure action against Lot 1 was an in rem action involving only the Waterloo property and determining by judicial process the amount of the debt and the right, absent the mortgagor's equity of redemption, to sell the property to satisfy Hamel's debt. The bank's action against Lot 1 does not deny it the right to enforce its multiple security interests in further actions involving different parties and different parcels of land.

Indeed, without speculating on the effect of individual statutes, suffice it to say that it would be difficult if not impossible and certainly impractical to require the mortgagee to bring one all-encompassing foreclosure action against separate parcels of encumbered property. Any attempt to join all interested parties and parcels in one action would be subject to rules of joinder of parties defendant and causes of action, Neb. Rev. Stat. §§ 25-317, 25-701, and 25-702 (Reissue 1979),

as well as to the specific joinder statute applicable in foreclosure actions, Neb. Rev. Stat. § 25-2141 (Reissue 1979), the rules controlling proper venue in foreclosure actions, Neb. Rev. Stat. §§ 25-401 and 25-402 (Reissue 1979), and the statute concerning real parties in interest, Neb. Rev. Stat. § 25-301 (Reissue 1979).

While we are aware that authority exists which would cast the Dupuys as necessary as opposed to proper parties, see, generally, G. Osborne, Handbook on the Law of Mortgages § 321 (2d ed. 1970), we nonetheless believe that the rule thwarts the sound policy considerations outlined in *Michigan National Bank, supra*. We also note that the rule is discretionary, depending upon the practicalities of joining all parties with an interest in the foreclosure action. G. Osborne, *supra*.

Because we have determined that a mortgage foreclosure such as this involves separate liens and separate parties and parcels of land, we find no merit in the Dupuys' contentions that successive foreclosures split a single cause of action and violate the principle of res judicata. We further note an abundance of authority validating consecutive foreclosures such as the one involved here. See, e.g., *Michigan National Bank v. Martin*, 19 Mich. App. 458, 172 N.W.2d 920 (1969); *Waken v. Bimstrom*, 172 Okla. 232, 45 P.2d 97 (1935); *Tacoma Sav. Bank & Trust Co. v. Safety Inv. Co.*, 123 Wash. 481, 212 P. 726 (1923).

The order of the district court releasing Lot 19 from the lien and directing Hamel to pay the deficiency amount is reversed and the cause remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

KRIVOSHA, C.J., dissenting.

I respectfully dissent from the majority opinion in this case. In my view the majority has reached a wrong conclusion because it has set its sights on the security and not upon the debt. In the instant case we have but a single transaction involving a *single* note secured by a *single* mortgage describing three parcels of ground. Western State Bank had but a single cause of action, and when it elected to sue on the note and

foreclose the mortgage, it in effect brought its only cause of action. To therefore permit Western State Bank to subsequently sue again on the very *same* note and seek to foreclose on the very *same* mortgage, I believe, constitutes a splitting of a cause of action and is not permitted. The matter is fully explained in 1 G. Glenn, Mortgages, Deeds of Trust, and Other Security Devices as to Land § 88 at 533 (1943), wherein the author notes:

> The mortgage presents the phenomenon of only one debt, with only one pledge to secure it. The debt may be split into bonds, or it may be payable in a series of notes, but in a broad sense it remains true that there is one debt, which arose out of one transaction. In like manner, there is only one pledge, although there may be many parcels of land, and many types of security. It follows that a foreclosure must be of the entire security; and, no matter how many parcels of land there may be, all should be included in the suit. To do otherwise is to "split an entire case," and that fault is penalized, in our jurisprudence, by refusal to hear the deferred portion in a later suit. It follows that a foreclosure upon one of two parcels will preclude a later foreclosure upon the other.

See, also, *Layden v. Layden*, 228 N.C. 5, 44 S.E.2d 340 (1947). That, likewise, has been the law in this jurisdiction since at least 1903. In the case of *Nebraska Loan & Trust Co. v. Domon*, 4 Neb. (Unoff.) 334, 93 N.W. 1022 (1903), it was said: "The foreclosure of a mortgage for the interest only on the principal debt secured thereby, where the whole debt, both principal and interest, is due and payable at the time of such foreclosure, ordinarily exhausts the lien of the mortgage, and is a bar to a second foreclosure suit." (Syllabus of the court.) It was further said in the *Nebraska Loan & Trust Co.* case, *supra* at 338, 93 N.W. at 1023: "In fact the general rule is, that where by the terms of a mortgage the whole amount of principal and interest is due, a foreclosure for a part thereof exhausts the lien of the mortgage."

And in *Johnson v. Payne*, 11 Neb. 269, 272, 9 N.W. 81, 82 (1881), we said that "whatever amount is due under the mortgage at the time of its foreclosure constitutes but a single and indivisible demand, and therefore cannot be separated and

collected by several actions." See, also, *Haines v. Flinn*, 26 Neb. 380, 42 N.W. 91 (1889).

In *Dooly v. Eastman*, 28 Wash. 564, 68 P. 1039 (1902), the Supreme Court of Washington, in a case very similar to the instant case, said:

> One having a mortgage on several pieces of land to secure the same debt cannot foreclose it by piecemeal, and if he attempt to do so he waives his lien upon the premises not included in the decree. As was well said by the supreme court of California in *Mascarel v. Raffour*, 51 Cal. 242, "by the foreclosure the mortgage is merged in the judgment, and a new action could not be maintained to foreclose the mortgage as to the omitted lot. A mortgage cannot be foreclosed by piecemeal in that way, and the legal effect of omitting from the decree a portion of the mortgaged premises is a waiver of the mortgage lien as to that portion. The mortgagor, therefore, cannot complain of the decree." . . . The loss of his lien may, and no doubt will, work a hardship upon appellant, but, as he shows that it was the result of his own voluntary act, he must abide the consequences.

*Id*. at 577-78, 68 P. at 1043-44.

The majority relies upon *Michigan National Bank v. Martin*, 19 Mich. App. 458, 172 N.W.2d 920 (1969), as illustrative of the majority's position and reasoning. It is interesting, however, to note that the court in *Michigan National Bank v. Martin, supra*, makes the very distinction which the dissent seeks to make. In *Michigan National Bank v. Martin, supra*, there were *two* notes and *three separate* mortgages on three separate parcels of ground. In affirming the trial court's decision to permit successive actions, the Court of Appeals for the State of Michigan said at 462-63, 172 N.W.2d at 921:

> Defendants have not cited any authority which would apply the rule against splitting to bar successive foreclosures upon separate mortgage instruments. *Dooly v. Eastman* (1902), 28 Wash 564 (68 P 1039), relied upon by defendants, is distinguishable, since there the mortgagee held but a single mortgage which covered several tracts of land. It was held that, where one holding a

single mortgage upon two tracts of land foreclosed against one only, he thereby waived any right to later foreclose upon the other tract. In the instant case, plaintiff held not one, but three separate mortgages.

Obviously, the Michigan court did not believe that whether there was but a single note and a single mortgage versus multiple notes and multiple mortgages was putting form over substance as suggested by the majority herein.

Furthermore, the majority's concern about what would happen if property was in more than one county is not well founded. Neb. Rev. Stat. § 25-402 (Reissue 1979) specifically provides:

If the real property, the subject of the action, be an entire tract, and situated in two or more counties, or if it consists of separate tracts situated in two or more counties, the action may be brought in any county in which any tract or part thereof is situated, unless it be an action to recover the possession thereof. . . .

Refusing to permit one who holds a mortgage to split a cause of action is not putting form over substance. I would have affirmed the judgment of the district court.