806 F.2d 812
 Wesley J. UMPLEBY, By and Through his co-conservators,
Charles UMPLEBY and Geneva Umpleby, Appellant,
v.
UNITED STATES of America, acting By and Through the
DEPARTMENT OF the ARMY, U.S. Army Corps of
Engineers, Appellee.
 No. 86-5099.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1986.
Decided Dec. 5, 1986.
 
 Joseph A. Vogel, Jr., Mandan, N.D., for appellant.
 Lynn Crooks, Asst. U.S. Atty., Fargo, N.D., for appellee.
 Before FAGG, BOWMAN and TIMBERS,* Circuit Judges.
 TIMBERS, Circuit Judge.
 Appellant Wesley J. Umpleby ("Umpleby") appeals from a judgment entered December 20, 1985 in the District of North Dakota, Bruce M. Van Sickle, District Judge, which granted summary judgment in favor of appellee, United States of America, acting by the United States Army Corps of Engineers ("the Corps") in an action pursuant to the Federal Tort Claims Act, 28 U.S.C. Sec. 2671 et seq. (1982) ("FTCA"). The court held that the North Dakota Recreational Use Statute, made applicable to this case through the FTCA, barred the action. The Recreational Use Statute limits the liability of a landowner who makes his or her land available to the general public for recreational use. N.D.Cent.Code Sec. 53-08-02 et seq. (1982). The court reasoned that when Umpleby was injured, on land belonging to the Corps, he was there for recreational purposes; and therefore the provisions of the Recreational Use Statute came into play, thus shielding the Corps from liability as a matter of law.
 On appeal Umpleby argues: first, that there is a genuine issue of material fact as to whether the conduct of the Corps was willful or malicious, such conduct, if willful or malicious, stripping the protections of the Recreational Use Statute; second, that there is a genuine issue of material fact as to whether Umpleby was on the land for recreational purposes within the meaning of the Recreational Use Statute; third, that the Corps waived the protections of the statute by entering into written agreements to assume management of the recreational area; and fourth, that the Recreational Use Statute is unconstitutional under the equal protection clause of the Fourteenth Amendment of the United States Constitution.[1]
 We hold that whether the conduct of the Corps was willful or malicious presents a genuine issue of material fact, precluding summary judgment; that the court correctly held that Umpleby was on the land for recreational purposes within the meaning of the Recreational Use Statute; and that the court correctly held that the Corps did not affirmatively waive the protections, if any, of the Recreational Use Statute. We express no opinion as to the constitutionality of the Recreational Use Statute under the United States Constitution. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-348 (1936) (Brandeis, J., concurring).
 
 
 1
 We reverse the judgment and remand the case to the district court for trial of the issue as to whether the conduct of the Corps was willful or malicious. We affirm in the other respects stated above.
 
 I.
 
 2
 We summarize only those facts believed necessary to an understanding of the issues raised on appeal.
 
 
 3
 On April 16, 1981 Wesley Umpleby was involved in a one-vehicle accident on an unnamed road leading from North Dakota Highway 1806 to a game management and recreation area known as "Schmidt Bottoms" or "Little Heart Bottoms", adjacent to the Oahe Reservoir in Morton County, North Dakota. The road is owned by the Corps and leased to the North Dakota Department of Game and Fish. Umpleby, who was sixteen years old at the time, was rendered a quadriplegic by the accident.
 
 
 4
 Prior to 1969 an unimproved trail was used by hunters and fishermen for access to the Reservoir. In 1969 the Corps and the Department of Game and Fish decided to improve the trail. The Corps, the Department of Game and Fish and Morton County each contributed approximately one-third of the construction costs for the completion of the improved road. The configuration of the road followed the natural contours of the preexisting trail. In 1970 another half mile section of the trail was improved. Periodic blading of the road was done by Morton County in 1977 at the request of the Department of Game and Fish. In 1978 and 1979 the road was regraveled by a private construction company under contract with the Corps. There were no structural changes made in the road during this repair work. In March 1979 the Department of Game and Fish proposed the construction of an additional .64 miles of access road to be built and graveled by the department. The Corps required that the plans and specifications be submitted to it for approval, along with a cultural resources survey, before construction began. The plans and specifications regarding the location of the road were drafted in the office of a Corps employee. An inspection by personnel of the engineering division of the Corps took place prior to commencement of the construction. The plans and specifications then were approved by the Corps. Construction was completed during the summer of 1980. The new road intersected the existing road at the 90? curve where the instant accident occurred.
 
 
 5
 Umpleby initially sued the State of North Dakota and Morton County in the North Dakota District Court (a state court). The State was dismissed by stipulation. Morton County prevailed on a motion for summary judgment, the trial court holding that the county had no legal duty to construct and maintain the road. That judgment was affirmed by the North Dakota Supreme Court. Umpleby v. The State of North Dakota, 347 N.W.2d 156 (N.D.1984).
 
 
 6
 Umpleby then commenced the instant action predicated on the FTCA. He seeks to hold the Corps liable on the theory that the road was improperly designed, constructed and maintained. He alleges that when the new road, constructed in 1980, intersected the existing road at the 90? curve, an abrupt loss of superelevation (banking) occurred on the curve. Umpleby further alleges that, although the road has a curve of 90? at the point of the accident, no warning signs of any kind were posted. It is Umpleby's contention that the evidence he presented to the district court in opposition to the Corps' motion for summary judgment raised a genuine issue of material fact as to the willfulness or maliciousness of the Corps in failing to guard or warn against a dangerous condition, thereby precluding summary judgment. We agree.
 
 
 7
 For the reasons stated below, we reverse the judgment of the district court granting the Corps' motion for summary judgment and we remand the case to the district court for trial of the issue as to whether the Corps' conduct constituted a willful or malicious failure to guard or warn of a dangerous condition. Although we agree with the district court that Umpleby was on the Corps' land for recreational purposes and that the Corps did not waive the protections, if any, of the Recreational Use Statute, we hold that summary judgment was improper.
 
 II.
 
 8
 (A) Standard of Review
 
 
 9
 The standard that an appellate court applies in reviewing an order which grants summary judgment is the same as that which governs the trial court's initial action under Fed.R.Civ.P. 56(c)--summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. All facts must be viewed in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. Portis v. Folk Construction Co., Inc., 694 F.2d 520, 522 (8th Cir.1982). We have emphasized repeatedly the drastic nature of the summary judgment remedy and have held that it should not be granted unless the moving party has established the right to summary judgment "with such clarity as to leave no room for controversy." Jewson v. Mayo Clinic, 691 F.2d 405, 408 (8th Cir.1982). Further, "[s]ince tort actions generally encompass a multitude of factual issues and abstract concepts that become elusive when applied to varying concrete factual situations, such actions are usually not appropriate for disposition by summary judgment." Hughes v. American Jawa, Ltd., 529 F.2d 21, 23 (8th Cir.1976).
 
 
 10
 (B) Governing Law
 
 
 11
 Under the FTCA the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. Sec. 2674. "[T]he test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." Rayonier v. United States, 352 U.S. 315, 319 (1957). Applying this test, the liability of the Corps is limited by the North Dakota Recreational Use Statute to the same extent as the liability of a private citizen.
 
 
 12
 The Recreational Use Statute limits a landowners' liability as follows:
 
 
 13
 "[A]n owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes."
 
 
 14
 N.D.Cent.Code Sec. 53-08-02.
 
 
 15
 This limitation on liability does not apply, however, if the conduct of the landowner consists of a "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity...." N.D.Cent.Code Sec. 53-08-05.
 
 III.
 
 16
 An analysis of the North Dakota Recreational Use Statute is found in Stokka v. Cass County Electric Cooperative, 375 N.W.2d 911 (N.D.1985). That was a wrongful death action in which recovery was sought for the death of an individual killed when he struck the defendant's unmarked guy wire while snowmobiling. The defendant moved for summary judgment, claiming that, because the plaintiff's decedent had been using the land for recreational purposes at the time of his death, the Recreational Use Statute barred recovery. The trial court agreed and granted the motion. In holding that there were no genuine issues of material fact and that the defendant was entitled to summary judgment as a matter of law, the trial court held, first, that the Recreational Use Statute governed the case and, second, that the exception for willful and malicious conduct was inapplicable. The North Dakota Supreme Court reversed, holding that the question of whether failure to guard or warn was willful was for a jury to determine. Id. at 915-16. The Supreme Court recognized that under North Dakota law:
 
 
 17
 "In order to characterize an injury as having been willfully or wantonly inflicted, it is necessary to show knowledge of a situation requiring the exercise or ordinary care and diligence to avert injury to another; ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand; and the omission of such care and diligence to avert threatened danger when to an ordinary person it must be apparent that the result likely would prove disastrous to another. [Citations omitted]."
 
 
 18
 Id. at 916 (quoting Van Ornum v. Otter Tail Power Co., 210 N.W.2d 188, 202 (N.D.1973)).
 
 
 19
 Application of the Van Ornum standard to the facts of the instant case leads us to conclude that the district court erred when it held as a matter of law that the exception for willful failure to guard or warn found in Section 53-08-05 was not pertinent to this case.
 
 
 20
 As for the first prong of Van Ornum, the evidence before the district court, viewed in the light most favorable to Umpleby, indicated that the Corps knew that the road had a curve of 90? at the point of the accident. According to deposition testimony, the plans and specifications regarding the location of the road were drafted in the Corps' office, a review of the plans was conducted by the Corps before construction began, and, in 1979, the Corps' engineering department inspected the road. Further, the Corps knew of the safety and design requirements for the road, based on its own publication entitled "Master Plan for Reservoir Development". Finally, the Corps knew, according to the deposition testimony of several employees of the Corps regarding responsibility for inspection of the area, that the curve was not posted with any warning signs.
 
 
 21
 As for the second prong of Van Ornum --the ability to avoid resulting harm by ordinary care and diligence with the means at hand--there was evidence before the district court: first, that the Corps had control of the road and was responsible for the overall supervision of its maintenance and design; and, second, that the Corps had access to its own engineering requirements, including the Manual on Uniform Traffic Control Devices for Streets and Highways which provides for the posting of appropriate signs according to the American National Standards Institute.
 
 
 22
 As for the third prong of Van Ornum --which requires an assessment from the vantage point of the ordinary person--the court should have inquired whether the road, as constructed and being devoid of any warning signs, was so dangerous that to the ordinary person it was apparent that the situation would prove disastrous to another--a situation of danger which the Corps did not seek to avert.[2]
 
 
 23
 We hold that the district court erred in concluding at this stage of the proceedings that the conduct of the Corps, assessed under the Van Ornum standard, did not constitute a willful or malicious failure to guard or warn against a dangerous condition. Accord, Mandel v. United States, 719 F.2d 963, 968 (8th Cir.1983) (reversing summary judgment where there was a genuine issue of material fact regarding willful or malicious failure to warn by the United States, under the Arkansas Recreational Use Statute).
 
 IV.
 
 24
 Umpleby claims that the district court erred in holding, as a matter of law, that he was on the access road for recreational purposes. This claim is without merit. Umpleby testified in his deposition that he was on the road because he had driven to the reservoir to rendezvous with some friends who were camping there. Under the definitional section of the Recreational Use Statute, both camping and pleasure driving are included as "recreational purposes".
 
 
 25
 Umpleby further claims that the Corps agreed to waive the protections of the Recreational Use Statute by entering into written agreements to assume management of the recreation area. See N.D.Cent.Code Sec. 53-08-04. Such a waiver, he contends, should be read into the contracts, management plans and the license agreement between the Corps and the Department of Game and Fish. In our view, the district court correctly held that there was no waiver, either express or implied. The license agreement which addresses liability states that the Corps will not be responsible for personal or property damage. Further, it requires that the State of North Dakota hold the Corps harmless from such damage. This language is the antithesis of waiver. Umpleby's claim to the contrary is without merit.
 
 V.
 To summarize:
 
 26
 We hold that the district court correctly held that Umpleby was on the access road for recreational purposes; and that the district court correctly held that the Corps had not waived the protections of the Recreational Use Statute, if any, when it entered into agreements to manage the recreational area.
 
 
 27
 We hold, however, that the district court erred in granting summary judgment, since there are genuine issues of material fact as to whether the conduct of the Corps constituted a willful or malicious failure to warn of a dangerous condition. On this issue we reverse and remand for proceedings consistent with this opinion.
 
 
 28
 Affirmed in part; reversed and remanded in part.
 
 
 
 *
 Of the Second Circuit, by designation
 
 
 [1]
 Umpleby also challenged the constitutionality of the Recreational Use Statute under the North Dakota constitution. In Stokka v. Cass County Electric Cooperative, 375 N.W.2d 911 (N.D.1985), the North Dakota Supreme Court upheld the Recreational Use Statute against an identical challenge. This holding of course is binding on the federal courts
 
 
 [2]
 On remand, the district court should consider whether the "ordinary person" in this case should be held to a higher standard consistent with the expertise, superior knowledge and skill of an engineer. See Prosser, The Law of Torts 161 (4th ed. 1971) ("But if he has in fact knowledge, skill, or even intelligence superior to that of the ordinary man, the law will demand of him conduct consistent with it.")