Anderson, J.,
delivered the opinion of the court.
The court is of opinion that B>. A. Brown, the appellant, regularly qualified as administrator de bonis non, of the estate of Lewis Smith, deceased, as appears by an attested copy of the order of the county court of Washington county, certified to this court by the clerk of the circuit court of Washington county, upon a writ of certiorari, and by the affidavit of --Blackley, Esq., of counsel for the said Brown.
*404 The court is further of opinion, that it appears from the record, that there was a judgment on a delivery bond of James C. Campbell and others at the June *erm> 1856, of the county court of Washington county, in favor of William Bing Heiskell, administrator de io'fds non of Lewis Smith, deceased; and that three executions offieri facias, were successively issued upon said judgment, and that if there was a return by an officer upon either of those executions, the limitation of the statute is twenty years from the return day of the execution, on which such return was made. There is no direct evidence of a return on either of said executions. The best evidence would be the writ of fieri facias itself, with the endorsement on it by the officer. But the records of the office were destroyed by fire, and the presumption is that said executions were destroyed with the other records. The only evidence which it seems was preserved from the records touching the matters in question, is the judgment on the delivery bond, and the memorandum of the clerk kept in his office, showing, as we take it, the date of the issue of each execution; when returnable; and that the two first were returned. The first was issued 1856, July 5th, and was returned August: the second issued 'September 18th same year, and was returned October: the third issued December 17th, and was returnable in January, 1857, but no return noted, but a black mark made before “ January,” indicating that no return was made.
This being all the evidence, and in consequence of the destruction of the records by fire, it is impossible for the plaintiff to adduce better evidence from the record, we think it is proper to rely on this, and that it may be inferred from it, that the two first executions were returned by the officer unsatisfied; otherwise the successive executions would not have been issued by the *405 clerk, and we may presume that the officer endorsed his return on them, as required by law to do. We may also infer from the entry made by the clerk, that the third execution which was issued, was never returned, The court is of opinion therefore, that the bar of the statute does not apply in this case, the suit having been brought within twenty years from the return day of the execution, not computing the time that the stay law was in operation.
We come now to a consideration of the case upon its merits. The hill alleges that no part of the judgment on the delivery bond “ has ever been paid, but the same is yet wholly due and unpaid, together with the interest thereon.” The answer denies that said judgment is still “ subsisting and unpaid,” and affirms that “ on the contrary it has long since been fully paid and satisfied;” and in support of that denial, and affirmation, he details the circumstances. He says, that when the last execution was issued on said judgment, Alexander C. Manwell was coroner, acting as sheriff, and A. T. Litchfield was his deputy, riding in the lower end of Washington county, where defendant then resided. That the execution came to Litchfield’s hands, and was duly levied by him on defendant’s property; hut before sale defendant paid up the debt in full, and took receipts from him, which, when he entered the military service of the Confederate States in 1861, he placed in the hands of A. Davis, Esq., with all his papers connected with the business of Trigg & Campbell, who had been selected by the parties as their agent, to wind up the business of the concern: and that these receipts have never been seen by him since. Davis who died before the institution of this suit, he says, informed him since the war, that said receipts, as well as other papers, were burned with his office in Abingdon in December, 1864. He says *406 he recollects that he made the first payment of $700 from the sale of property, in February or March, 1857-as the receipt has been destroyed, he cannot give the exact date. The last payment he says was made with money borrowed from the Exchange bank Abingdon. He says he paid to said Litchfield on the 28th of March, 1857, $4,400, by checks on said bank; that being the amount due him on this and other claims, which he held against him.
The foregoing statement, the defendant made in his answer on oath, and being affirmative matter, it must be supported by proof. But proof positive and direct is not required. It may be circumstantial and inferential. And it is especially reasonable and just to rely upon such evidence in defence against a stale demand— when the claim originated more than a quarter of a century ago, and when more than twenty-three years have elapsed since the last execution was issued upon the judgment, before the bringing of the present suit to enforce it, and the records of the office from which the execution issued, and was returnable, have been destroyed by fire. In such a case it must be presumed that many of the original parties and witnesses to the transaction are dead, and that if any are living, their memory of the transaction would naturally be imperfect, uncertain and unreliable.
But we are told that A. T. Litchfield, the officer in whose hands the execution was placed, and to whom defendant affirms it was fully paid, is still living, and competent to testify in this case, and plaintiff’s counsel earnestly insist, that the failure of the defendant to take his deposition raises a strong presumption against the justness of his defence.
But, speaking for myself, he was equally as competent a witness for the plaintiff as for the defendant. Plaintiff was aware that the defendant had affirmed on *407 oatli that he had long since paid the debt in fall, and he must have been aware that he relied on strong presumptive evidence in support of what he affirmed, which, unless rebutted, might be effectual to maintain his defence. If it was not founded in truth, it could probably be shown by introducing the testimony A. T. Litchfield. Why did he not take his deposition ? There was no conflict of interest between them to deter him, and no community of interest between him and the defendant. If he should testify in favor of the plaintiff that the defendant had never paid him the execution in question, or any part of it, or even that he had no recollection of having received payment of it, or of any part of it, from the defendant, his testimony could not prejudice his own interests. It would seem, therefore, that the failure of the plaintiff to take his deposition might reasonably raise the presumption that he did not take it because he. was apprehensive that his testimony would be against him.
But the relation of Litchfield to the defendant was different. If he had testified that the defendant had paid him the money on the execution he would have fixed his liability to the estate of Lewis Smith for it. And if he could not, in consequence of the loss of receipts, after such a lapse of time, and his absence from the country, or the death of witnesses, establish the fact that he had paid the money to W. K. Heiskell, the administrator, he might be held liable for it; for in a suit against him by the administrator de bonis non of Lewis Smith, it might be held that he would not be a competent witness to testify, Heiskell being dead, that he had paid the money to him. If the defendant had then called on him to testify that he had paid the money on the execution to him, it would have been to testify against his own interest. It would seem to be, therefore, unreasonable to conclude that because *408 the defendant did not take the testimony of Litchfield,, an<l risk the making a party his witness, who, if he testified in his favor, would testify at least contingently against his own interest, that a presumption would thereby arise against the justness of his defence. The inference, I think, is more reasonable from what appears, that the defendant’s counsel were confident that the plaintiff could not maintain his action upon the record as it was; that A. T. Litchfield being a nonresident and residing in a distant State, and having left the country perhaps a great many years ago, and not having his attention directed to these transactions for so long a time, and probably not having preserved his papers—having no use for them in Missouri, where he had made his home—might probably be unable to recall those transactions, and concluded to submit the case upon the record as it was, which they deemed sufficient, and not incur the trouble and expense of taking the deposition of Mr. Litchfield in Missouri, to do which it might have been necessary to send an agent there to take his deposition, and to refresh his memory of transactions which occurred so long ago, and which had probably for many years been entirely dismissed from his mind. Under all the circumstances, though it would be more satisfactory to have his testimony, I think no presumption can be raised unfavorable to the defendant in Consequence of his not having taken it.
Does the circumstantial and presumptive evidence support the affirmative allegations of the answer, that the debt has been paid ?
The judgment was obtained in March, 1856, in favor of William Heiskell, administrator de bonis non of Lewis Smith, and there seems to have been no disposition on the part of the plaintiff, after he obtained judgment, to extend indulgence to the defendants» *409 An execution was promptly issued, a delivery bond taken, which it is-presumable made the debt perfectly secure, and a judgment rendered thereon at the June term following. Upon this judgment executions were issued in rapid succession—one on the 5th of July, one on the 18th of September, and the third on the 17th of December. The first two were returned unsatisfied, as we have inferred, in favor of the plaintiff. Why the sheriff did not make the money on them does not appear. The last.execution, which issued in December, was made returnable in January following, which, if the date of the issuing and of the return is accurately stated, did not allow the officer sufficient time to make a levy and sale of the property before the return day. The defendant avers in his answer that the levy was made on his properly, and that before sale, which the sheriff (having levied) had a right to make after the return day, he. paid the debt and satisfied the execution in full. But the plaintiff by requiring the execution to be returnable so quickly, showed a determination to force the collection of the debt without further delay. If this last execution was returned to the office it must have been burnt with the other records; and it is fair to presume that it was satisfied, as no other execution was ever issued thereafter, or any demand made for payment from that time until the bringing of this suit—more than twenty-three years afterwards. How the conduct of the plaintiff in pressing the payment of his debt, from the date of his original judgment up to December, 1856, can be reconciled with his never issuing another execution afterwards, or making any demand or effort to collect it for twenty-three years, except upon the hypothesis that the last execution he issued was satisfied, as the answer solemnly affirms, is inconceivable.
*410 The answer is supported in its details by the record as &■’ as we have it, and by the written evidence. His first payment he says was $700. He cannot remember Precise date? because the receipt he took from the officer was destroyed in the burning of Mr. Davis’ office in Abingdon, with whom he had left it. It was said there is no proof in the record of the burning of Mr. Davis’ office. An occurrence of such notoriety as that, and the subsequent death of Mr. Davis of Abingdon, we may presume was known to the judge of that circuit, and needed no proof. But he recollected that he raised the money by selling property, and made the payment in February or March, 1857. The record shows that the execution was issued on the 17th of December, 1856, and the presumption that the officer did his duty, and made the levy before the return day, goes to support the affidavit of the defendant, and the 'sale, it is not probable, could have been made before February or March. It was never made; and the presumption is, it would have been made, if the execution had not been satisfied, as affirmed in the answer. It is in proof also that the officer had another execution in his hands against the defendant, and received from him on the 28th of March, 1857, checks to the amount of $4,400 on the Exchange bank of Virginia in Abingdon, .which is shown by the production of the checks themselves, written across the face “paid;” and the said officer on the 30th of March, two days after, paid to O. G-. Bekem $2,044.16, which was evidently paid in satisfaction of an execution which said officer had in his hands against the defendant and others in favor of William B. Heil, and which was returned “ satisfied, and the money paid to plaintiffs’ attorney as per receipt within.” On the same day, 30th of March, 1857, the said A. T. Litchfield paid to William K. Heiskell $2,280.65 by a check on the said Exchange bank, as shown by the *411 check, which is marked “paid.” And these two checks amount together to $4,324.81, which the checks he received from the defendant two days before, put him in funds sufficient to pay, with a surplus of about $75. It is a circumstance also entitled to be considered, that in January, 1857, Heiskell upon settlement of his administration of Smith’s estate, was in advance to said estate, and was individually entitled to the amount less $6 or $7 paid him by Litchfield, the payment of which satisfied what was due him from the estate of Lewis Smith, and the payment to him by Litchfield of $6 or $7 more tends to show that it was intended to satisfy whatever was due on the execution against the defendant, who had supplied him with funds ample to pay the whole. It is incredible that the check given by Litchfield to Heiskell for $2,280.65 was not applied to the payment of the execution of Heiskell, administrator, against the defendant, and that it was not paid out of the check which Litchfield had received two days before from the defendant. And it being for so many dollars and so many cents implies that it was for whatever was due upon the execution; otherwise it would have been given for a round sum, and it tends to support the affirmation of the defendant’s answer, that he had paid $700 before. And this conclusion that the said check was in full satisfaction of the execution, is further confirmed by the fact that no other execution was afterwards issued or demand made for any balance, which certainly would have been done if the whole execution had not been satisfied by the check of $2,280.65.
I am of opinion that the facts and circumstances as shown by the record, considered in connection with the staleness of the demand, and the delay in asserting the claim, though not entirely satisfactory, do raise a preponderating presumption in support of the sworn *412 affirmation of the defendant in his answer—that he Fas paid the debt, and that there is no error in the decree dismissing the plaintiff’s bill. For the fore-§°*ng reasons> I am of opinion to affirm the decree of the circuit court, with costs.
Decree aeeirmed.