SPROUSE, Circuit Judge:
James R. Nuckolls and Judy M. Nuckolls, a husband and wife trading as Jim’s and Judy’s Restaurant (the Nuckolls or debtors), appeal a district court judgment that they are not entitled to exempt certain equipment used in their restaurant business from their Chapter 7 bankruptcy estate and to avoid a security interest in the same equipment asserted by Dominion Bank of the Cumberlands, N.A. (the Bank). Prior to filing the bankruptcy petition, the debtors had recorded homestead deeds covering, among other things, the restaurant equipment at issue. After commencing bankruptcy proceedings the debtors filed in the bankruptcy court a complaint seeking a declaratory judgment as to the validity, priority, and extent of the Bank’s security interest. The bankruptcy court held that the Bank had failed to perfect its security interest by not filing a financing statement in both locations required under Virginia law, and that under the Bankruptcy Code, the debtors could exercise the power of the trustee to avoid unperfected security interests. On appeal by the Bank, the district court reversed, finding that the Bank’s security interest was enforceable against the debtors even though not perfected against *410 third parties, and that the debtors could and did waive the homestead exemption in favor of the Bank’s security interest. The debtors appeal. We agree with the district court that the Bank had perfected its security interest but hold that the debtors had filed a valid homestead exemption and that the Bankruptcy Code permits them to avoid their waiver of it. The decision of the district court is reversed and the case remanded to the bankruptcy court for findings of fact as to which items of property are covered by the Bankruptcy Code’s lien avoidance provision.
I.
During the fall of 1982 the debtors received two loans from the Bank, in the amounts of $2500 and $3500, the proceeds of which were used to purchase equipment and inventory for their restaurant business, Jim’s and Judy’s Restaurant of Grundy, Virginia. They made no repayments and in November 1982 received another loan in the amount of $7094.07 from the Bank. The proceeds of the November loan were used to pay off the earlier two loans and to provide them a cash amount of $1000. The debtors executed an agreement securing the November loan and pledged the restaurant’s inventory, equipment, accounts receivable, and cash as collateral. The debtors also signed a Uniform Commercial Code financing statement listing the same collateral. In the loan agreement the debtors waived any right to claim homestead exemptions under Virginia law as to the collateral.
Initially, the Bank filed the financing statement only in the Circuit Court of Buchanan County — not filing with the Virginia State Corporation Commission, as required by the Virginia UCC, until after the debtors had filed their petition in bankruptcy.
On May 20, 1983, the debtors filed homestead deeds in Buchanan County, Virginia, claiming exemptions for, among other things, the restaurant equipment. On May 31, 1983, they filed a petition in bankruptcy. At the time of filing the petition, the debtors owed the Bank $8,857.22, representing the proceeds of the November 1982 loan plus interest.
II.
Under section 522 of the federal Bankruptcy Code, 11 U.S.C. § 522 (1982 & Supp. II 1984), a debtor may exempt certain property from the bankruptcy estate. The Bankruptcy Code defines the types of property exempt under federal law, but states are given the option to enact their own exemption schemes. 11 U.S.C. § 522(b)(2)(A), (d) (1982 & Supp. II 1984). Virginia has opted out of the federal scheme, so its statutory exemptions govern the Nuckolls’ bankruptcy case. Va.Code Ann. § 34-3.1 (1984). Under the Virginia scheme, each debtor is entitled to a homestead exemption. Virginia Code section 34-4 provides in part that “[ejvery householder or head of family residing in this State shall be entitled ... to hold exempt ... real and personal property, or either, to be selected by him, ... to the value of not exceeding $5,000.” Va.Code Ann. § 34-4 (1984). Each of the Nuckolls is entitled to a full $5,000 exemption under this provision. Cheeseman v. Nachman, 656 F.2d 60, 64 (4th Cir.1981). They filed homestead deeds which purport to exclude from their estate property valued at $10,000, including the restaurant equipment. The Bank contends first that the homestead exemption does not protect the restaurant equipment, and second that even if the equipment constitutes exempt property under Virginia law, the Nuckolls expressly waived the homestead exemption in the loan agreement.
III.
Initially we must determine whether the exemption could be claimed in the absence of a waiver by the debtors. The Virginia statute provides that the homestead exemption of section 34-4
shall not extend to any execution order or other process issued on any demand ... [f]or the purchase price of such property or any part thereof. If the property *411 purchased and not paid for be exchanged for or converted into other property by the debtor, such last named property shall not be exempted from the payment of such unpaid purchase money under the provisions of [section 34-4].
Va.Code Ann. 34-5(1) (1984). The Bank contends that this section deprives the debtors of the exemption, because the proceeds of the loan secured by the equipment were used indirectly to purchase the equipment.
The proceeds of the loan at issue here were not used to purchase the equipment. The proceeds repaid outstanding obligations and provided an additional cash advance to the debtors. The cases applying the section 34-5(1) exception involve materially different facts. In each case a bankrupt purchaser of goods had failed to pay the price to the vendor of the goods, but still sought to exempt the goods from the estate under the homestead exemption. In re Tobias, 103 Fed. 68 (W.D.Va.1900); Rose v. Sharpless & Son, 74 Va. 407, 33 Gratt. 153 (1880). Upon objection by creditors, the courts prevented the debtor from applying the homestead exemption to goods for which the debtor could not prove he had paid the purchase price. Tobias, 103 Fed. at 70; Rose, 74 Va. at 409, 33 Gratt. at 158. This result obtained even when the objecting creditor was not the vendor of the goods not paid for. In re Campbell, 124 Fed. 417, 422-23 (W.D.Va.1903). These cases are inapposite, as the instant record contains no suggestion that the vendor of the restaurant equipment failed to receive the purchase price. The Bank is not pursuing an action “[f]or the purchase price” of its collateral, so it is not entitled to the protection of section 34-5(1).
IV.
In the loan agreement, however, the Nuckolls expressly waived “the benefit of any homestead exemption to protect property from being used by [the Bank] to pay off the loan_” Under Virginia law such a waiver is enforceable against the debtor. Va.Code Ann. 34-22 (1984); White v. Owen, 71 Va. 28, 32, 30 Gratt. 43, 53-54 (1878); In re Barbarossa, 438 F.Supp. 840, 842 (E.D.Va.1977). The Nuckolls argue nonetheless that section 522 of the Bankruptcy Code allows them to claim the exemption despite their waiver. We think as to the debtors the loan is secured and the security interest perfected under Virginia law, so we disagree with their contention that the waiver is voided by the operation of section 522(e), covering unsecured loans. We feel, though, that the waiver was properly avoided under the lien avoidance provision of section 522(f).
Section 522(e) provides that
[a] waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section.
11 U.S.C. § 522(e) (1982 & Supp. II 1984). Without question the security agreement between the Bank and the debtors created a security interest in the equipment in favor of the Bank valid under Virginia law. New Jersey Fidelity & Plate Glass Insurance Co. v. General Electric Co., 160 Va. 342, 347-48, 168 S.E. 425, 427 (1933); Va.Code Ann. § 8.9-201 (1965). The debtors argue, however, that the Bank failed to perfect its interest by proper filing.
Under the Virginia UCC, perfecting the security interest in the restaurant equipment required filing a financing statement in two locations: the office of the clerk of the court of Buchanan County, where the business was located, and the office of the State Corporation Commission. Va.Code Ann. 8.9-401(1)(c) (1965 & Supp.1984). The Bank promptly filed in Buchanan County, but neglected to file with the Corporation Commission until after the bankruptcy petition was filed. This failure strictly to comply with the statute leaves the security interest in the equipment unperfected as against third parties. In re Mauck, 378 F.Supp. 904 (W.D.Va.1974). As against the debtors, however, *412 the interest is perfected. The Virginia UCC provides:
A filing which is made in good faith in an improper place or not in all of the places required by this section is ... effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.
Va.Code Ann. 8.9-401(2) (1965 & Supp. 1984). According to the Official Comment to this subsection, “filing in only one of the two required places is not effective except as against one with actual knowledge of the contents of the defective financing statement.” Id. Official Comment, at 202. The debtors signed the financing statement at the time the November loan was executed. Because they then had actual knowledge of the contents of the financing statement, the Bank’s security interest was perfected as to them. Because section 522(e) of the Bankruptcy Code applies only to waivers of exemptions involving “an unsecured claim against the debtor,” it is unavailable to the debtors here.
V.
We conclude, however, that under section 522(f) the debtors may avoid the Bank’s lien despite their waiver of the homestead exemption. Subsection (f) provides in pertinent part that:
[notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a nonpossessory, nonpurchase-money security interest in any ... implements, professional books, or tools, of the trade of the debtor.
11 U.S.C. § 522(f)(2)(B) (1982). A debtor may use this subsection to avoid liens on property over which he claims an exemption even if he had previously agreed to create the lien by granting to the creditor/lienholder a security interest in the property. Hall v. Finance One of Georgia, Inc. (In re Hall), 752 F.2d 582, 584 (11th Cir.1985); Matthews v. Transamerica Financial Services (In re Matthews), 724 F.2d 798, 800 (9th Cir.1984) (per curiam); Augustine v. United States, 675 F.2d 582, 584-85 (3d Cir.1982); In re Nowak, 43 B.R. 545, 546 (Bankr.W.D.Wis.1984); In re Dipalma, 24 B.R. 385 (Bankr.D.Mass.1982).
The language of the statute is straightforward — the avoiding power applies “[notwithstanding any waiver.” 11 U.S.C. § 522(f). We think that section 522(f) thus remains effective despite a waiver of the homestead exemption. Statements in the legislative history of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549 (codified as amended at 11 U.S.C. §§ 101-151326 (1982 & Supp. II 1984)), lend support to this conclusion. As the Eleventh Circuit has summarized:
Congress evidenced its concern about over-reaching creditors who obtained nonpossessory, nonpurchase-money security interests covering a substantial part of debtors’ otherwise exempt property. Congress found that debtors usually granted blanket security interests, and agreed to waive their right to exempt property, without understanding the consequences of their actions. The property subject to these liens often was of little value to the creditors, because of its low resale value, but its replacement cost to debtors was usually high. Accordingly, creditors, although they did not view the property as a source of funds to which they could turn in the event of default, often used the threat of foreclosure to coerce debtors into making payments. Under section 522(f), debtors can now protect themselves from this practice by avoiding these liens in bankruptcy.
Hall v. Finance One of Georgia, Inc. (In re Hall), 752 F.2d 582, 588 (11th Cir.1985); see H.Rep. No. 595, 95th Cong., 1st Sess. 126-27 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6087-88.
*413 The Senate Report, in describing the provision which became subsection (f), noted that it
protects the debtor’s exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-mon-ey security interest in certain household and personal goods. The avoiding power is independent of any waiver of exemptions.
S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5862. Although the focus of congressional concern appears to have been contracts of adhesion covering consumer goods, the statute is not so limited. The debtor’s knowledge of or intent to grant the security interest or waiver of exemption sought to be avoided is irrelevant, and the statute expressly covers property other than household goods. See Augustine v. United States, 675 F.2d 582, 585-86 (3d Cir.1982).
We have discovered dicta but no direct holdings to support this result. In In re Caldwell, 15 B.R. 811 (Bankr.N.D.Ga.1981), the court denied the plaintiff debtor summary judgment on a complaint alleging inadequate disclosure under the Consumer Credit Protection Act. In the course of so holding, the court noted that the debtor had validly waived certain exemptions under Georgia law. “Accordingly, until such time as a debtor files a petition in bankruptcy and takes active steps to avoid a lien which impairs an exemption of said debtor, a waiver of exemptions is valid and a security interest in those exemptions is also valid.” 15 B.R. at 812. The court went on to state that “a waiver of exemptions is not void but voidable,” 15 B.R. at 813, implying that section 522 is the means for avoidance. A similar inference follows from the court’s holding in In re Ballard, 5 B.R. 570 (Bankr.E.D.Va.1980), that a debtor’s waiver of the Virginia homestead exemption as to certain real property could not be avoided pursuant to section 522(f) because the security interest “is not a judicial lien nor does the real estate qualify for the exclusion of personal property listed in § 522(f)(2)(A), (B), and (C).” 5 B.R. at 572. The implication is that waivers could be avoided under section 522(f) as to property within 522(f)(2)(B), such as the restaurant equipment in this case. But see United States v. Scott, 45 B.R. 318, 321 n. 5 (M.D.N.C.1984) (procedural waiver of exemption, by failure to respond to notice to set off exempt property, could not be escaped by asserting avoiding power of section 522(f)).
Our final task is to determine whether the restaurant equipment at issue here is the type of property covered by section 522(f). Despite the Bank’s assertion to the contrary, the lien it holds is a “nonposses-sory, nonpurchase-money security interest” under section 522(f)(2). It is not a purchase-money lien, because it secures a loan made to refinance a pre-existing debt—not to acquire the collateral. The “refinancing or consolidating loans by paying off the old loan and extending a new one extinguishes the purchase money character of the original loan because the proceeds of the new loan are not used to acquire rights in the collateral.” Matthews v. Transamerica Financial Services (In re Matthews), 724 F.2d 798, 800 (9th Cir.1984) (per curiam); Rosen v. Associates Financial Services, 17 B.R. 436, 437 (D.S.C.1982); In re Jones, 5 B.R. 655 (Bankr.M.D.N.C.1980); U.C.C. § 9-107(b), Official Comment 2.
An unresolved question remains as to whether all of the restaurant equipment constitutes “implements ... or tools, of the trade of the debtor” so as to warrant application of 11 U.S.C. § 522(f)(2)(B). Although no test has emerged, the standard applied by the courts appears to be whether the items are “specifically suited” to business use, In re Meany, 35 B.R. 3 (Bankr.D.Kan.1982), or peculiar to the trade of the debtor, In re Tofstad, 19 B.R. 34 (Bankr.D.N.D.1982). The specific equipment involved in the present case includes a restaurant stove, sinks, deep fryer, ta *414 bles, booths, and various other items. Determination of the applicability of section 522 to each piece of equipment is a fact-specific determination best made in the first instance by the bankruptcy court. See In re Metzig, 33 B.R. 620 (Bankr.N.D.Tex.1983) (debtor in business of remodell-ing buildings could avoid liens on saws, air compressors, spray rigs, staple guns, and welding equipment, but could not avoid liens on pickup truck, lumber inventory, and office furniture and equipment).
The judgment of the district court is, therefore, reversed and the case remanded to the district court with instructions to remand it to the bankruptcy court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.