**In re James R. NUCKOLLS, Judy M. Nuckolls t/a Jim's & Judy's Restaurant Debtors.**

**James R. NUCKOLLS, et ux., Plaintiffs,**

**v.**

**DOMINION BANK OF THE CUMBERLANDS, N.A., et al., Defendants.**

**Bankruptcy No. 7–83–00665. Adv. No. 7–84–0056.**

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

June 16, 1986.

Copeland, Molinary & Bieger, Abingdon, Va., for debtors/plaintiffs.

Street, Street, Street, Scott & Bowman, Grundy, Va., for defendant Dominion Bank.

Robert E. Wick, Jr., Bristol, Va., trustee/defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

This case is on remand from the United States Court of Appeals for the Fourth Circuit to determine whether certain restaurant equipment constitutes tools of the trade under 11 U.S.C. § 522(f)(2)(B).

The relevant facts are as follows. The Debtors, James R. Nuckolls and Judy M. Nuckolls, operated Jim & Judy's Restaurant in Grundy, Virginia. In the Fall of 1982, the Debtors obtained two loans from the predecessor in interest of Dominion Bank of the Cumberlands, N.A. ("Dominion") in the amounts of $2,500.00 and $3,500.00 for purchase of equipment and inventory.

In November, 1982, the Debtors executed a note in the principal sum of $7,094.97 in favor of Dominion to pay off the previous two loans and provide the Debtors with $1,000.00 cash. In the loan agreement, the Debtors waived any right to claim Homestead exemptions under Virginia law. At this time, the Debtors also executed a financing statement and security agreement covering the restaurant inventory, equipment, accounts receivable, and cash as security for the loan.

Dominion subsequently filed the financing statement in the office of the Clerk of the Circuit Court of Buchanan County, Virginia. Dominion did not file a copy of the financing statement with the Virginia State Corporation Commission pursuant to *Virginia Code* § 8.9–401(1)(c) until after filing of the bankruptcy petition.

On May 20, 1983, the Debtors filed Homestead Deeds in the Buchanan County Clerk's Office, each claiming as exempt listed restaurant equipment in the sum of $5,000.00. On May 31, 1983, the Debtors filed their Chapter 13 petition with this Court. At that time, the Debtors were indebted to Dominion in the sum of $8,857.22. The Debtors closed their business in December, 1983 and, by Order dat-

ed January 19, 1984, the case was converted to a case under Chapter 7.

Thereafter, the Debtors filed a Complaint initiating this adversary proceeding seeking a declaratory judgment determining the nature and extent of Dominion's security interest. On June 20, 1984, this Court issued a Memorandum Opinion and Order which found that since Dominion had failed to perfect its security interest by dual filing required under Virginia law, the exemption claimed by the Debtors should be granted and Dominion's lien avoided. On appeal taken by Dominion, the District Court reversed, finding that Dominion's security interest was enforceable and that the Debtors' waiver of their right to claim the property as exempt was valid. Thereafter, the Debtors appealed the case to the Fourth Circuit Court of Appeals.

In an Opinion dated December 18, 1985, the Fourth Circuit determined that as against the Debtors, who had knowledge of the contents of the financing statement, Dominion held a perfected security interest. *Dominion Bank of the Cumberlands v. Nuckolls*, 780 F.2d 408, 412 (4th Cir. 1985). The court went on to conclude that, contrary to the holding of the District Court, under the language of § 522(f), despite their waiver of the Homestead exemption, the Debtors could in fact avoid Dominion's lien. 780 F.2d at 412. The court left unresolved whether the restaurant equipment in which Dominion holds a nonpossessory nonpurchase-money security interest constitutes "implements ... or tools, of the trade" under § 522(f)(2)(B) in which the Debtors could seek to avoid the lien. Noting that the issue was a fact-specific determination best made by the Bankruptcy Court, the case was remanded to the District Court with instruction to remand it to this Court for further proceedings consistent with its Opinion. Pursuant thereto, hearing was held on April 22, 1986 and the matter was taken under advisement for determination.

Under 11 U.S.C. § 522, a debtor may exempt certain property from the bankruptcy estate. Such property is either that listed in the federal exemptions of § 522(d) or, in the alternative, the property which is exempt under state exemption laws. 11 U.S.C. § 522(b)(1) and (2). Pursuant to *Virginia Code* § 34–3.1[1]. Virginia has "opted out" of the federal exemptions of § 522(d) and, in *Virginia Code* § 34–26[2],

---

1. *Virginia Code* § 34–3.1 provides:

§ 34–3.1. Property specified in Bankruptcy Reform Act not exempt. —No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of § 522 of the Bankruptcy Reform Act (Public Law 95–598), except as may otherwise be expressly permitted under this title. (1979, c. 692.)

2. *Virginia Code* § 34–26 provides:

§ 34–26. Exempt articles enumerated. — In addition to the estate, not exceeding in value $5,000, which every householder residing in this State shall be entitled to hold exempt, as provided in Chapter 2 (§ 34–4, *et seq.*) of this title, he shall also be entitled to hold exempt from levy or distress the following articles or so much or so many thereof as he may have, to be selected by him or his agents:
(1) The family Bible.
(1a) Wedding and engagement rings.
(2) Family pictures, schoolbooks and library for the use of the family.
(3) A lot in a burial ground.
(4) All necessary wearing apparel of the debtor and his family, all beds, bedsteads and bedding necessary for the use of such family, 2 dressers or 2 dressing tables, wardrobes, chifforobes or chests of drawers or a dresser and a dressing table; carpets, rugs, linoleum or other floor covering, and all stoves and appendages put up and kept for the use of the family not exceeding 3.
(5) All cats, dogs, birds, squirrels, rabbits and other pets not kept or raised for sale; 1 cow and her calf until 1 year old, 1 horse, 6 chairs, 6 plates, 1 table, 12 knives, 12 forks, 2 dozen spoons, 12 dishes, or if the family consists of more than 12, then a plate, knife, fork and 2 spoons, and a dish for each member thereof; 2 basins, 1 pot, 1 oven, 6 pieces of wooden or earthenware; 1 dining room table, 1 buffet, china press, 1 icebox, freezer or refrigerator of any construction, 1 washing machine, 1 clothes dryer not to exceed $150 in value, 1 loom and its appurtenances, 1 kitchen safe or 1 kitchen cabinet or press, 1 spinning wheel, 1 pair of cards, 1 axe and provisions other than those hereinafter set out of the value of $50; 2 hoes; 50 bushels of shelled corn, or, in lieu thereof, 25 bushels of rye or buckwheat; 5 bushels of wheat, or 1 barrel of flour; 20 bushels of potatoes, 200 pounds of bacon or pork, 3 hogs, fowl

lists property which may be claimed as exempt.

Section 522(f) provides:

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

Simply stated, § 522(f) allows the debtor to avoid judicial liens on all exempt property and nonpossessory, nonpurchase-money security interests on property enumerated in that section in which the debtor claims an exemption. The lien avoidance power under § 522(f) is applicable to exemptions claimed under § 522(b), including state law exemptions. As previously noted by this Court, under § 522(f), "... a debtor who claims the state exemption may avoid a lien in such property to the extent such an exemption is allowed by the state." *In re Snellings*, 10 B.R. 949, 955 (Bankr.W.D.Va. 1981); *In re Rogers*, 5 B.R. 761 (Bankr.W.

D.Va.1980); 3 *Collier on Bankruptcy*, ¶ 522.29[1] at 522–84 (15th Ed.1985).

The Fourth Circuit has remanded this case to determine whether the restaurant equipment constitutes " 'implements ... or tools, of the trade of the debtor' so as to warrant application of § 522(f)(2)(B)." 780 F.2d at 413. Thus, our decision must turn on whether the property constitutes tools of the trade which the Debtors could properly exempt under the state statute.

*Virginia Code* § 34–26 provides that every householder is entitled to hold exempt from levy or distress listed articles up to a value of $5,000.00 which he selects, including "... in the case of a mechanic, the tools and utensils of his trade." *Virginia Code* § 34–26 does not define what constitute the tools or utensils of the trade; however, this Court has addressed the provision on two prior occasions. In *In re Dummitt*, 2 B.R. 136 (Bankr.W.D.Va.1980), the debtor, a traveling salesman, sought to exempt his automobile as a tool of the trade. We concluded that by excluding itself from the federal exemptions of § 522(d) which provide for an automobile exemption, the Virginia General Assembly did not intend to incorporate an automobile exemption within *Virginia Code* § 34–26 and that the automobile could not be classified as a tool of the trade. In doing so, we recognized that other courts have found automobiles to constitute tools of the trade, but none had construed the specific language of the Virginia statute. 2 B.R. at 138, and cases cited therein. Moreover, we found it difficult to categorize the debtor as a "mechanic" who was entitled to claim the tool of trade exemption under state law. On similar facts, we reached the same result in *In re Williams*, 39 B.R. 944 (Bankr.W.D.Va. 1984).

---

not exceeding in value $25, all canned and frozen goods, canned fruits, preserved fruits or home-prepared food put up and prepared for use and consumption of the family, $25 in value of forage or hay, 1 cooking stove and utensils for cooking therewith, 1 sewing machine, *and in case of a mechanic, the tools and utensils of his trade,* and in case of an oysterman or fisherman his boat and tackle, not exceeding $1,500 in

value; if the boat and tackle exceed $1,500 in value the same shall be sold, and out of the proceeds the oysterman or fisherman shall first receive $1,500.00 in lieu of such boat and tackle. (emphasis added)

No officer or other person shall levy or distrain upon, or attach, such articles, or otherwise seek to subject such articles to any lien or process.

258

In light thereof, we cannot say that the property in controversy falls within the "tools of the trade" language of *Virginia Code* § 34–26 such that it is exempt property in which the Debtors may attempt to avoid the fixing of a lien under § 522(f). As in *Dummitt, supra,* we have a hard time categorizing the Debtors in this case as "mechanics" who may invoke exemption. Having concluded that these items do not constitute tools of the trade, they are not exempt from the bankruptcy estate and remain as assets of the estate.

In discussing the secured status of Dominion in this case, the Fourth Circuit recognized that Dominion properly filed a financing statement in Buchanan County, but neglected to file with the State Corporation Commission until after filing of the bankruptcy petition. The court concluded correctly that "this failure to strictly comply with the statute [*Virginia Code* § 8.9–401(1)(c) ] leaves the security interest in the equipment unsecured as against third parties." 780 F.2d at 411, citing *In re Mauck,* 378 F.Supp. 904 (W.D.Va.1974).

Under *Virginia Code* § 8.9–301(1)(b), "an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected." *Virginia Code* § 8.9–301(3) defines a "lien creditor" to include "a Trustee in bankruptcy from the date of the filing of the petition." Thus, as numerous courts have recognized, an unperfected security interest is subordinate to the rights of a bankruptcy Trustee. *In re Fregosi,* 23 B.R. 641 (Bankr.E.D. Va.1982); *In re Southern Properties, Inc.,* 44 B.R. 838 (Bankr.E.D.Va.1984); *In re Kors, Inc.,* 50 B.R. 874 (Bankr.D.Vt.1985); *In re Measure Control Devices, Inc.,* 48

B.R. 613 (Bankr.E.D.N.Y.1985); *In re Rhine,* 22 B.R. 42 (Bankr.D.S.D.1982); *In re D G & Associates,* 9 B.R. 94 (Bankr.E.D. Tenn.1981); *In re Munro Brothers, Inc.,* 20 UCC Rep. 739 (W.D.Mich.1976); *In re Cohen,* 4 UCC Rep. 22 (E.D.Pa.1967); *In re Brandes,* 2 UCC Rep. 859 (E.D.Pa.1964).

Moreover, under the strong arm provisions of § 544(a)[3], the bankruptcy Trustee obtains as of the commencement of the case, without reference to any knowledge of the Trustee, the rights of a creditor on a simple contract with a judicial lien on the debtor's property as of the commencement of the case. Such a hypothetical lien creditor would also prevail over a party with a security interest which is unperfected as of filing of the bankruptcy petition. In light of these statutory provisions, Dominion's interest in the collateral, being unperfected vis-a-vis the Trustee until postpetition, is subordinate to the interest of the bankruptcy Trustee.

The restaurant equipment in this case has not been abandoned[4] and, therefore, remains an asset for the Trustee to administer. Accordingly, it is

### ADJUDGED and ORDERED

that for the reasons expressed herein, the subject collateral does not constitute "tools of the trade" for purposes of § 522(f)(2)(B) which the Debtor may claim as exempt and remains property of the estate. The bankruptcy Trustee, having priority over Dominion's unperfected security interest, is directed to administer the assets for the benefit of the estate. It is so ORDERED.

---

3. Section 544(a) provides in part:
    The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the Debtor or any obligation incurred by the Debtor that is voidable by—
    (1) a creditor that extends credit to the Debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all

property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;...

4. Counsel for the Debtors originally filed a motion on February 6, 1984 to sell part of the equipment in which Dominion had an interest but, following hearing thereon, was directed by the Court to file this adversary proceeding instead.