923 F.2d 848
 14 UCC Rep.Serv.2d 294
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J.I. CASE COMPANY, J.I. Case Credit Corporation, Plaintiffs-Appellants,
v.
CRESTAR BANK, Trent Equipment Company, Incorporated,
Defendants-Appellees.
 No. 90-2659.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1990.
Decided Jan. 25, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. James H. Michael, Jr., District Judge. (CA-83-154-L)
 Sidney Harold Kirstein, McRorie, Kirstein & Gay, Lynchburg, Va., for appellants.
 Bevin Ray Alexander, Jr., Edmunds & Williams, P.C., Lynchburg, Va., for appellee.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal concerns whether the district court properly granted summary judgment in favor of Crestar Bank. Finding no error, we affirm.
 
 I.
 
 2
 In 1966, Trent Equipment Company, Inc. ("Trent") became a dealer for J.I. Case Company ("Case Co."). As part of the dealership and financing arrangement, Trent executed two financing statements granting Case Co. and Case Credit Corporation ("Case Credit") security interests in Trent's inventory and equipment. Case Credit is a wholly owned subsidiary of Case Co. Case Credit and Case Co. will be referred to collectively as "Case." A financing statement covering inventory of new Case equipment was given in favor of Case Credit. A financing statement covering replacement parts, equipment, etc., was given in favor of Case Co. Details of the filings of the statements are set out here in chronological order.
 
 
 3
 In 1966, Case Co. filed a financing statement as local File 337 which lists Trent as the debtor and Case Co. as the secured party. The collateral was described as repair parts for Case machinery, and the filing was signed by both Trent and Case Co. A continuation statement was timely filed on October 1, 1970; however, the statement was signed by Case Credit as the secured creditor, not Case Co. On October 1, 1975, Case again attempted to continue File 337. This continuation statement listed the secured party as Case Co. "and/or" Case Credit. Along with the continuation statement, Case filed an amendment, seeking to add collateral described as "all inventory of Case machinery, equipment, parts, and attachments therefor." We note that the amended collateral was previously covered in local File 338, which is discussed below. On February 20, 1981, Case filed an undated continuation statement for File 337.
 
 
 4
 In 1966, Case Credit filed a financing statement in local File 338, which lists Trent as the debtor and Case Credit as the secured party. File 338 covered collateral described as inventory held by Trent, which included inventory in Case equipment. A continuation statement was filed on November 23, 1970; however, the secured party was listed as Case Co., not Case Credit. In 1976, Case allowed File 338 to lapse when it amended File 337 to add the inventory formerly covered by File 338 to the collateral covered by File 337.
 
 
 5
 In 1966, Case Co. filed a financing statement, presumably identical to local File 337, with the State Corporation Commission ("SCC") as File 5357. This file was continued in November 1970, but was allowed to lapse in 1976 when Case attempted to merge File 5357 into File 5360 at the SCC. The records of this filing were destroyed by the SCC since the filing was allowed to lapse. Therefore, the only evidence regarding this file is found in an affidavit and attached receipts from the SCC.
 
 
 6
 In 1966, Case Credit filed a financing statement with the SCC as File 5360, which was identical to local File 338. Case Credit filed a continuation statement in November 1970. In 1975, Case continued the file again, and amended the file to include the inventory previously covered by File 5357. Another continuation statement was filed in 1981.
 
 
 7
 In 1981, 15 years after opening the Case dealership, Trent borrowed money from United Virginia Bank, now known as Crestar Bank ("Crestar"). The loan was secured by a blanket financing statement that granted Crestar a security interest in the inventory of Case equipment. Crestar notified Case of the newly executed financing statements in April of 1981. Case then wrote Crestar on April 10, 1981, explaining that Case intended to acquire a purchase money security interest ("PMSI") in future equipment shipments to Trent. Case then shipped additional equipment to Trent on May 25, 1981, and continued to make shipments until December 10, 1981.
 
 
 8
 In June of 1982, Trent failed to pay Crestar money owed on the secured note. Therefore, Crestar began to foreclose, seizing Trent's assets including the Case equipment covered by the Case financing statements. In response, Case filed a motion for judgment, a petition for writ of attachment, and a supporting affidavit of value in the Circuit Court of Campbell County, Virginia, asserting a superior perfected security interest in the inventory. Case seized the inventory during that motion, but then later non-suited its motion for judgment. Case had already disposed of the inventory to other Case dealers, however, and could not return the collateral to Crestar. Thus, the trial court entered judgment against Case for the value stated in the original attachment affidavit without further evidentiary hearing. On appeal, the Virginia Supreme Court affirmed the trial court's judgment, but remanded the case for an evidentiary hearing to ascertain the value of the collateral Case had disposed of.
 
 
 9
 While the appeal to the Virginia Supreme Court was pending, Case filed this suit in the United States District Court for the Western District of Virginia. Case sought a declaratory judgment to resolve the priority dispute between the parties.
 
 
 10
 Both parties filed motions for summary judgment and supporting memoranda, and after a hearing on the matter, the district court granted summary judgment to Crestar. The Virginia Supreme Court eventually concluded that the collateral was worth $157,136.22 with interest. The district court then entered that valuation in its final order in favor of Crestar on March 30, 1990. This appeal followed.
 
 
 11
 Case has not challenged the effectiveness of any of Crestar's financing statements including those covering Trent's inventory, equipment, and general intangibles. Thus, the resolution of this controversy depends on the effectiveness of Case's financing statements and whether the Case security interests have priority over the Crestar security interest.
 
 
 12
 There appear to be two main issues in this appeal: (1) whether any defects in Case's filings were fatal to the perfection of its security interests; and (2) whether Sec. 8.9-401(2) relieves Case of the defects in its filings. We will address each issue in turn.
 
 II.
 
 13
 The first issue is whether any defects in Case's filings were fatal to perfection of the security interests. Crestar alleged that numerous defects in the filings by Case rendered the Case security interests unperfected. Case argued that any defects which occurred were "harmless errors" and that the Case security interests were perfected. The district court agreed with Crestar that the Case security interests were not perfected. The district court found that File 337 was not perfected because there was no dual filing as required by Sec. 8.9-401(1)(c) of the Virginia Code. See In re Mauck, 378 F.Supp. 904, 905 (W.D.Va.1974) ("There is no dispute that if [the creditor] did not satisfy the dual filing requirements of Sec. 8.9-401(1)(c) its security interest in the equipment is unperfected...."); Dominion Bank v. Nuckolls, 780 F.2d 408 (4th Cir.1985) (failure to comply with dual filing requirement leaves the security interest unperfected as against third parties). The district court also found that File 338 was not properly continued, thus rendering it unperfected as well. In addition, the district court found that even if the security interests had been perfected initially, they lapsed when "there was a failure to file a timely continuation statement in 1980."
 
 
 14
 While we are inclined to agree with the district court that the many errors in the Case filings rendered the security interests unperfected, we need not resolve these issues. The reason is that resolution of these issues is irrelevant in light of the fact that Case failed to properly continue the financing statements in October 1980, thereby allowing the security interests to lapse. Once the filings lapsed, any previous filings were rendered unperfected.
 
 
 15
 The lapse in this case was caused by the attempted amendment to File 337 in 1975. File 337 had originally covered repair parts for Case machinery. On October 10, 1975, Case amended the financing statement to include Case inventory, which had previously been covered in File 338. File 338 was allowed to lapse. By amending File 337, Case added collateral which had not been covered in that file previously. Section 8.9-402(4) of the Virginia Code allows amendments to financing statements; however, it sets out that the financing statement is effective as to the amended collateral only from the filing date of the amendment. Va.Code Ann. Sec. 8.9-402(4) (1965). Section 8.9-402(4) provides:
 
 
 16
 The term "financing statement" as used in this title means the original financing statement and any amendments but if any amendment adds collateral, it is effective as to the added collateral only from the filing date of the amendment.
 
 
 17
 Id.
 
 
 18
 The 1975 amendment added new collateral--the inventory in Case equipment--to File 337; therefore, the "anniversary date" from which the continuation period is calculated is October 10, 1975. Thus, to determine if the security interest in the inventory of Case equipment was continuously perfected, we must look to see if any continuation statement was filed in File 337 prior to October 10, 1980. None was filed. A continuation statement for File 337 was filed in February 1981, in keeping with the 5 year calculations based on the original filing date of March 1966. However, that continuation statement came too late with regard to the amended collateral at issue here, which was added to File 337 on October 10, 1975. The effect of this failure to continue is that Case's security interest in the inventory at issue here was unperfected. Therefore, with regard to the first issue, the defects in Case's filings were fatal to the perfection of their security interests.
 
 III.
 
 19
 The second issue is whether Sec. 8.9-401(2) relieves Case of the defects in its filings. Section 8.9-401(2) provides that a "filing which is made in good faith in an improper place or not in all the places required by this section is nevertheless effective ... against any person who has knowledge of the contents of such financing statement." Va.Code Ann. Sec. 8.9-401(2) (Supp.1976). Case asserts that Crestar had knowledge of the contents of Case's financing statements. "A person knows or has knowledge of a fact when he has actual knowledge of it." Va.Code Ann. Sec. 8.1-210(25) (1965). Accordingly, if Crestar actually knew of the contents of Case's financing statements, then Case's security interest would have been perfected under Sec. 8.9-312(3) regardless of any filing errors. See Temporaries Inc. v. Maryland Nat'l Bank, 626 F.Supp. 1025 (D.Md.1986) (PMSI perfected even though party failed to file with SCC since competing creditor had actual knowledge of contents of misfiled statement).
 
 
 20
 The district court found, and Crestar contends, that Crestar did not have actual knowledge of the contents of the statements on the basis of In re County Green Ltd. Partnership, 438 F.Supp. 693 (W.D.Va.1977). In Green, the court held that knowledge of a security agreement was not the same as knowledge of the contents of the financing statement. Id. at 698. Rather, Sec. 8.9-401(2) only applies when the competing secured party actually knows of the contents of the unperfected financing statement. Id.
 
 
 21
 Case argues that Crestar had the knowledge required by Green. Case cites the following facts as support for this position. First, Case notified Crestar in writing that Case intended to take a PMSI in the equipment. Also, according to an affidavit, Case telephoned a Crestar representative and told him that Case had "recorded financing statements vis-a-vis J.I. Case inventory and parts floor-planned to Trent Equipment which had been executed and recorded for many years." Since Crestar knew of Case's intent to acquire a PMSI in the equipment, knew that Case had security agreements "recorded" covering the equipment, and knew that Trent was a Case dealer and that Case was financing Trent's acquisition of new equipment, Case argues that Crestar had notice of the contents of the financing statement covering the Case equipment.
 
 
 22
 Crestar contends that it did not have knowledge of the contents of the financing statement covering equipment. Therefore, Crestar argues that Sec. 8.9-401(2) does not apply.
 
 
 23
 "It is clear that the courts have almost universally required actual, rather than constructive knowledge of the general contents of the financing statement. However, the nature of the actual knowledge required varies substantially across a broad spectrum." In re Mistura, 705 F.2d 1496, 1498 (9th Cir.1983). Two Fourth Circuit cases that have found actual knowledge under Virginia law are helpful because, in both cases, the party had actually seen the financing statement and thus actually knew of the contents. See Zieg v. United States, 849 F.2d 898 (4th Cir.1988) (creditor had conducted a lien search and gained actual knowledge of the financing statement); Dominion Bank v. Nuckolls, 780 F.2d 408 (4th Cir.1985) (debtors had actual knowledge of contents of defective financing statement because they signed it). In contrast, Crestar did not actually see the financing statements in this case.
 
 
 24
 We might agree with Case that Crestar had knowledge of all the facts that Case alleges. However, that knowledge still would not translate into the conclusion that Crestar had actual knowledge of the contents of the financing statement covering the Case equipment. Despite conducting a search of the record, Crestar did not actually see the statement,* nor did Crestar ever know exactly what were the contents of the financing statement. The knowledge that Crestar did have was insufficient to meet the actual knowledge required by Green. Therefore, the district court properly ruled that Sec. 8.9-401(2) did not relieve Case from its defects in filing.
 
 IV.
 
 25
 To summarize, we find that any security interest which Case might have had in the Case equipment lapsed when no continuation statement was filed prior to October 10, 1980. Further, we find that Crestar did not have actual knowledge of the contents of the Case financing statements under the Green rationale. Therefore, Case was not relieved of the defect in its perfection of the security interest under Sec. 8.9-401(2). As a result, Crestar's perfected security interest had priority over Case's unperfected security interest. Accordingly, the district court did not err when it granted summary judgment in favor of Crestar, and we hereby affirm the order of the district court.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Counsel for Crestar conducted a search of the record, but was unable to find the financing statements covering the Case inventory because of the defects in the continuation statements, listing the wrong entity as the secured party