THE FEDERAL LAND BANK OF OMAHA, A CORPORATION, APPELLEE, v. KURT BLANKEMEYER AND SHARON K. BLANKEMEYER, HUSBAND AND WIFE, APPELLANTS, DAKOTA COUNTY STATE BANK, APPELLEE.

422 N.W.2d 81

Filed April 15, 1988.   No. 86-551.

William J. Rieb, for appellants.

Gregory N. Lohr, for appellee Federal Land Bank of Omaha.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Defendants Kurt and Sharon K. Blankemeyer, husband and wife, appeal from the order of the district court denying them a homestead exemption in certain land and confirming its sale, pursuant to a prior decree of foreclosure, to plaintiff-appellee, The Federal Land Bank of Omaha. The Blankemeyers assert the district court erred in failing to find Neb. Rev. Stat. § 40-103 (Reissue 1984), which provides that the "homestead is subject to execution or forced sale in satisfaction of judgments

obtained . . . on debts secured by mortgages upon the premises executed and acknowledged by both husband and wife . . . ," violates federal law, as well as Neb. Const. art. I, § 3, and art. III, § 18. We affirm.

The Blankemeyers mortgaged their improved 268 acres of farmland in Dakota County, Nebraska, to the bank. At that time each of them executed and acknowledged the mortgage contract, which provides that each relinquished "all rights of homestead" in the mortgaged premises.

After a time, the Blankemeyers failed to make the required mortgage payments. As a consequence, the district court entered a decree of foreclosure and subsequently ordered the property sold in satisfaction of the unpaid liens. The bank purchased the land at the sheriff's sale. In the meantime, the Blankemeyers had filed for protection under the federal Bankruptcy Act and, at the hearing to determine whether the sheriff's sale to the bank should be confirmed, claimed the homestead exemption in question.

It should be noted that the Blankemeyers do not question the factual bases for confirming the sale; their attack is solely a legal one, claiming that § 40-103 contravenes superior federal law and violates the Constitution of this state.

Section 40-103 is part of a larger statutory scheme found at Neb. Rev. Stat. §§ 40-101 to 40-118 (Reissue 1984), which creates and defines the limits of this state's homestead exemption in bankruptcy and forced sales. By the enactment of Neb. Rev. Stat. § 25-15,105 (Reissue 1985), Nebraska rejected the federal bankruptcy exemption scheme; consequently, state exemptions, including the homestead exemption, "apply to any bankruptcy petition filed in Nebraska after April 17, 1980."

The homestead exemption, as applicable to the Blankemeyers, is defined at § 40-101:

A homestead not exceeding in value six thousand five hundred dollars, consisting of the dwelling house in which the claimant resides, its appurtenances, and the land on which the same is situated, not exceeding one hundred and sixty acres of land, to be selected by the owner thereof, and not in any incorporated city or village . . . .

In the Blankemeyers' view, § 40-103 is in conflict with 11

U.S.C. § 522(f) (1982), which provides:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such a lien is—
>
> (1) a judicial lien . . . .

Section 522(b) (Supp. II 1984) and its cross-referent, 11 U.S.C. § 541 (1982 & Supp. II 1984), are not at issue.

In sum, the thesis of the Blankemeyers' first argument is that the bank's foreclosure of their defaulted mortgage somehow created a "judicial lien" which may be avoided in bankruptcy under § 522(f)(1), notwithstanding the waiver of homestead exemption which the Blankemeyers executed as part of their mortgage contract with the bank.

The definition of "judicial lien" is found at 11 U.S.C. § 101(32) (Supp. IV 1986): " 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Conversely, according to § 101(33), " 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." Further, under § 101(45), " 'security interest' means lien created by an agreement."

The federal bankruptcy court for the northern district of Iowa has considered the very argument the Blankemeyers urge upon this court. In *In re Miller*, 8 Bankr. 672, 673 (Bankr. N.D. Iowa 1981):

> The issue [was] whether the foreclosure of a mortgage [on real estate] pursuant to Iowa law converts the consensual mortgage lien into a judicial lien that may be avoided pursuant to § 522(f)(1) of the Bankruptcy Code.
>
> This Court concludes that a transformation does not take place and no such result was intended by Congress when it enacted the section in question.
>
> . . . .
>
> The legislative history of this section sets out the purpose of subsection (f), which is to " 'protect the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid liens on exempt property. The

debtor may avoid a judicial lien on any property to the extent the property could have been exempted in the absence of the lien . . .' "

. . . .

The legislative history of [the code section which defines "lien"] provides: "In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens."

There is nothing in the legislative history of the Code that would indicate that Congress intended that a diligent creditor who obtained a judgment in foreclosure with respect to his security interest would thereby lose his rights through avoidance in bankruptcy proceedings by the use of § 522(f)(1). It seems clear that the provision for avoidance of judicial liens was meant to apply to judgments obtained on debts that would otherwise be unsecured.

Neither the language of the Code definitions nor the legislative history suggests that a mortgage lien is avoidable merely because it has been established by judgment in a foreclosure action. The lien of the mortgage was not "obtained" by judgment, levy, etc. As the language of the decree suggests, the lien of the mortgage was simply "established" by the judgment. The mortgage lien was neither extinguished by the foreclosure decree nor merged into the judgment of the foreclosure decree. Nor is there any contention here that [the mortgagee] has, by its actions, waived its consensual mortgage lien.

See, also, *In re Gugenhan*, 55 Bankr. 507 (Bankr. D. Kan. 1985) (equitable mortgages were not "judicial liens" and could not be avoided by chapter 11 debtors under § 522(f)(1)); *In re Grosso*, 51 Bankr. 266 (Bankr. D.N.M. 1984) (judicial liens were avoided under § 522(f)(1) to the extent that they impaired debtor's bankruptcy residence exemption, and debtor would be entitled to that exemption except to the extent that he had voluntarily impaired it through a consensual lien given to secure an unliquidated note for attorney fees); *In re Hart*, 50 Bankr.

956 (Bankr. D. Nev. 1985) (lien, representing former husband's equity in marital residence, arose either by virtue of an express agreement between husband and debtor or by the imposition of an equitable lien to carry out the parties' intent under the divorce decree and, as such, qualified as a security interest rather than a "judicial lien" and was not avoidable under § 522(f)(1)); *In re Simonson*, 44 Bankr. 269 (Bankr. M.D. Pa. 1984), *aff'd* 758 F.2d 103 (3d Cir. 1985) (where debtor's property was fully encumbered even without judicial liens which had been avoided, debtors could not preserve judicial liens for their own benefit and could not fill shoes of judicial lienholders to the detriment of second mortgagee); *In re Boyd*, 31 Bankr. 591 (Bankr. D. Minn. 1983), *aff'd Boyd v. Robinson*, 741 F.2d 1112 (8th Cir. 1984) ("judicial lien," as contemplated by § 522(f)(1), is an interest which encumbers a specific piece of property granted to a judgment creditor who was previously free to attach any property of the debtor's to satisfy his interest but who did not have an interest in a specific piece of property before the occurrence of some judicial action).

As this court noted in *Northwestern Mut. Life Ins. Co. v. Nebraska Land Corp.*, 192 Neb. 588, 592, 223 N.W.2d 425, 428 (1974), "A foreclosure proceeding . . . is not brought to create a lien but to enforce one already in existence."

In their reply brief to this court, the Blankemeyers are particularly vituperative in their criticism of *In re Miller*, 8 Bankr. 672 (Bankr. N.D. Iowa 1981), stating, through counsel, that they "would not rely upon Miller to be the law. Nor . . . cite it for authority to be the law for which it purportedly stands. Miller appears to stand alone. It is a 'maverick'." Reply Brief for Appellants at 3. The Blankemeyers refer this court to five cases, attaching copies thereof to their briefs, which they claim support their position that *Miller* is a legal aberration. Reviewing each of these five cases, we find:

*In re Schmidt*, 119 Bankr. L. Rep. (CCH) ¶ 69,708 (Bankr. N.D. Ohio Jan. 20, 1984), does not stand for the proposition that foreclosure of a mortgage constitutes a judicial lien under § 522(f)(1). In *Schmidt*,

> The property in question is the debtors' residence which has an appraised fair market value of approximately

> $78,000.00. The property is encumbered by two mortgages totalling approximately $70,825.68 leaving the debtors some $7,174.82 of equity. The debtors claim homestead exemption in the real estate of $10,000.00. 11 U.S.C. § 522(b)(2)(A); Section 2329.66 (a)(1) of the Ohio Revised Code. The judgment lien which is the target of debtors' avoidance effort is for approximately $14,000.00. The narrow question which arises is how much of the judicial lien may the debtors avoid pursuant to 11 U.S.C. § 522(f)(1) . . . .

¶ 69,708 at 84,320. Not only is the *Schmidt* record devoid of any indication that the "judicial lien" somehow arose from the mortgage mentioned above, but the facts suggest the contrary. The *Schmidt* homestead was subject to mortgages in the amount of $70,825.68; the "judgment lien" complained of was in the amount of $14,000. This disparity strongly suggests that the lien at issue in *Schmidt* arose from some source other than the mortgages.

*Dominion Bank of the Cumberlands, NA v. Nuckolls*, 780 F.2d 408 (4th Cir. 1985), involved a perfected security interest asserted by Dominion Bank in the debtor's restaurant equipment, not a mortgage on real estate. Under Virginia law, " '[e]very householder or head of family residing in [Virginia] shall be entitled . . . to hold exempt . . . real and personal property, or either, to be selected by him, . . . to the value of not exceeding $5,000.' Va. Code Ann. § 34-4 (1984)." 780 F.2d at 410. The court of appeals notes:

> In the loan agreement . . . the Nuckolls expressly waived "the benefit of any homestead exemption to protect property from being used by [the Bank] to pay off the loan. . . ." Under Virginia law such a waiver is enforceable against the debtor. . . . The Nuckolls argue nonetheless that section 522 of the Bankruptcy Code allows them to claim the exemption despite their waiver. . . . We feel . . . that the waiver was properly avoided under . . . section 522(f).

780 F.2d at 411. However, the court of appeals did not rely upon § 522(f)(1) but, rather, upon § 522(f)(2)(B), which provides that

> [n]otwithstanding any waiver of exemptions, the debtor

may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . (2) a nonpossessory, nonpurchase-money security interest in any . . . (B) implements, professional books, or tools, of the trade of the debtor . . . .

Clearly, *Nuckolls* is inapposite to the Blankemeyers' contention that a judicial decree of foreclosure against mortgaged real estate is a "judicial lien" within the meaning of that phrase in the Bankruptcy Code. Indeed, the *Nuckolls* court cites *In re Ballard*, 5 Bankr. 570 (Bankr. E.D. Va. 1980), for the contrary proposition; the dictum in *Nuckolls* is to the effect that

a debtor's waiver of the Virginia homestead exemption as to certain real property could not be avoided pursuant to section 522(f) because the security interest "is not a judicial lien nor does the real estate qualify for the exclusion of personal property listed in § 522(f)(2)(A), (B), and (C)."

780 F.2d at 413.

In *In re Jaxtheimer*, 119 Bankr. L. Rep. (CCH) ¶ 69,701 (Bankr. S.D. Fla. Jan. 27, 1984), the lien complained of arose from a money judgment won against the debtor and subsequent judicial raising of an equitable lien in favor of the judgment creditor in the debtor's real property. As noted earlier, a money judgment is not involved in the case before us; rather, a foreclosure of a consensual mortgage lien is involved.

In *In re Sajkowski*, 151 Bankr. L. Rep. (CCH) ¶ 70,538 (Bankr. D.R.I. Apr. 12, 1985), the federal bankruptcy court for the district of Rhode Island held that "[t]he federal homestead exemption covers a debtor's proceeds from a Chapter 7 trustee's sale of the home postpetition. Exemptions are determined at the time the bankruptcy petition is filed. Additionally, properly construed, Section 522(d)(1) applies to the value of the debtor's equity in the residence." (Syllabus of the court.) This holding illuminates the scope of the federal homestead exemption, not the scope of the phrase "judicial lien" in § 522(f). As noted earlier, Nebraska has rejected the federal bankruptcy provisions, preferring its own list of exemptions. § 25-15,105.

The question posed in this case is not addressed in *Sajkowski, supra*. Furthermore, nothing in the opinion indicates that either of the two liens complained of in *Sajkowski, supra*, arose by mortgage foreclosure.

Finally, in *In re Princiotta,* 152 Bankr. L. Rep. (CCH) ¶ 70,563 at 87,112 (Bankr. D. Mass. May 6, 1985), the bankruptcy court held that "a rather curious" land sale contract gave the debtor rights in the real estate against which an exemption could be taken "pursuant to 11 U.S.C. § 522(d)(1) and (5) (1979)," and judgment liens against this property were avoided under § 522(f). *Princiotta* did not involve foreclosure of a mortgage against the property, nor the question in this case: Does a judgment of foreclosure create a "judicial lien"?

Contrary to the Blankemeyers' rather stridently expressed opinion, the bankruptcy court's holding in *In re Miller,* 8 Bankr. 672 (Bankr. N.D. Iowa 1981), is well reasoned and well supported in the cases. The Blankemeyers have failed to bring to this court's attention, nor has independent research unearthed, any case law whatsoever in support of their position. It is clear that a judicial decree of foreclosure merely confirms the preexisting consensual mortgage lien, *Northwestern Mut. Life Ins. Co. v. Nebraska Land Corp.*, 192 Neb. 588, 223 N.W.2d 425 (1974), and does not create a "judicial lien," as that term is used in § 522(f)(1). The Blankemeyers' first argument is without merit.

The Blankemeyers next contend that § 40-103 violates the mandate of Neb. Const. art. I, § 3, that no person be deprived of property without due process of law.

The gist of the Blankemeyers' second argument is that § 40-103 unconstitutionally prevents them "from enjoying the fruits of 11 USC §522(f)," thereby depriving them "of their homestead property without due process of law." Brief for Appellants at 12. In view of our resolution of the Blankemeyers' first argument, it is clear that their second argument is equally without merit.

Finally, the Blankemeyers contend that § 40-103 violates Neb. Const. art. III, § 18, in that it immunizes the bank from the application of § 522(f), gives the bank a "very special

privilege not accorded others in the same class," and "directly and bluntly discriminates against" the Blankemeyers. Brief for Appellants at 13.

In relevant part, Neb. Const. art. III, § 18, prohibits the Legislature from granting any "corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . ." Our analysis of the Blankemeyers' first argument disposes of the first aspect of this third argument. Section 40-103 does not immunize the bank from the operation of § 522(f); the federal statute simply does not apply.

As to the remaining two aspects of their third argument, the Blankemeyers profess astonishment at the notion that "[i]f a judgment debtor owes, for example, $1,000.00 upon an ordinary debt, his homestead property cannot be subjected to a forced sale or an execution. But if the same judgment debtor owes $1,000.00 for a mortgage debt, his homestead can be sold if he does not pay up." Brief for Appellants at 14. We observe, however, that creation of the power to foreclose and levy upon a homestead, although authorized by statute, is achieved not by statute but by agreement between the parties. Thus, in permitting mortgage liens held by "appellee and other banks and financial institutions" to reach their debtor's homestead property, the Legislature has not granted anyone special or exclusive privileges, immunity, or a franchise but, rather, has merely recognized that some debtors may wish to waive their homestead exemption when mortgaging land in order to increase their borrowing power. The Blankemeyers' third argument is therefore as devoid of merit as were the other two.

Since the judgment of the district court is correct, it is affirmed.

AFFIRMED.